## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO TEACHERS UNION, LOCAL 1, et al., | ) ) | |
| | ) | |
| Plaintiffs, | ) | Case Nos. 12-cv-10311, 15-cv-8149 |
| | ) | |
| v. | ) ) | Judge Sara L. Ellis Magistrate Judge Young Kim |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, a body politic and corporate, | ) ) | |
| | ) | |
| Defendant. | ) | |

## AGREED MOTION FOR PRELIMINARY APPROVAL OF A SETTLEMENT AGREEMENT

Plaintiffs, the Chicago Teachers Union, Local 1, American Federation of Teachers, AFL-CIO ("CTU[1]"); Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr. (the "Named Plaintiffs"); and the classes they represent (collectively "Plaintiffs"), through their respective counsel, move this Honorable Court for an order preliminarily approving the proposed Settlement Agreement in connection with the proposed settlement of all claims asserted by Plaintiffs in the above captioned matters. The proposed Settlement Agreement is attached to this Motion as Exhibit 1 ("Exh.1"). In support of this Motion, Plaintiffs state as follows:

1.      On December 26, 2012, the CTU and the Named Plaintiffs filed a Class Action Complaint (Case No. 12-cv-10311, herein, the "2012 Case") in the United States District Court for the Northern District of Illinois asserting individual and

---

[1] Capitalized terms are used as defined herein and in the Settlement Agreement.  *See* Exh. 1, Section 3.1.

class claims of race discrimination under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e *et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42

U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983,

against the Board on behalf of African-American persons employed by the Board as

teachers and paraprofessionals ("PSRPs") in any school or attendance center subject

to reconstitution ("turnaround") on or after the 2012 calendar year, after filing

charges with the United States Equal Employment Opportunity Commission

("EEOC").

2.      On March 13, 2013, the Board answered and denied all material

allegations in the complaint and denied any liability to the Plaintiffs.

3.      On December 9, 2015, this Court certified a class of African-American

teachers and PSRPs in the 2012 Case, pursuant to Rules 23(b)(2) and 23(b)(3) of the

Federal Rules of Civil Procedure (the "Certified Class").  The Certified Class was

defined as follows:

> All African American persons employed by the Board of Education of
> the City of Chicago as a teacher or para-professional staff, as defined
> in the labor agreement between the Chicago Teachers Union and the
> Board of Education, in any school or attendance center subjected to
> reconstitution, or "turnaround," in the 2012 calendar year.

Case No. 12-cv-10311, Dkt. 173.

4.      On May 23, 2016, a Class Notice was issued by mail to all

individuals identified as potential class members. The Class Notice required

any individual wishing to opt out of the class to notify Class Counsel by July

25, 2016. One individual opted out of the Certified Class.

5. On September 16, 2015, the CTU and Edward Scott filed a Class Action Complaint (Case No. 15-cv-8149, the "2015 Case," collectively with the 2012 Case, the "Litigation") in the United States District Court for the Northern District of Illinois asserting individual and class claims of race discrimination under Title VII, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, against the Board on behalf of African-American persons employed by the Board as teachers and paraprofessionals in any school or attendance center subject to turnaround on or after the 2011 calendar year, including during the 2013 and 2014 calendar years.

6. On November 30, 2015, the Board answered and denied all material allegations in the Complaint and denied any liability to the CTU and Edward Scott.

7. On December 9, 2015, the 2012 and 2015 Cases were consolidated.

8. On June 14, 2016, Mr. Scott was dismissed as a Named Plaintiff in the 2015 Case and the CTU remained as a Plaintiff in its associational capacity. Thereafter, the CTU proceeded with the 2015 Case as to declaratory and injunctive relief only. The Court entered a schedule for briefing class certification, but the CTU did not file a motion for class certification. The Board has asserted that any class claim and any claim for monetary damages was waived by the CTU and Mr. Scott in the 2015 Case.

9. On March 17, 2021, the Court denied the Parties' cross motions for summary judgment. Dkt. 314. As the result of that order, it is clear to the Parties that, absent a settlement, this Litigation will proceed to trial. The Parties anticipate that the trial of these cases will be very lengthy.

10. In an effort to fully explore and exhaust any option for a settlement, on April 19, 2021, the Parties began participating in settlement negotiations, mediated by Magistrate Judge Young Kim. These negotiations have been lengthy and have been conducted in good faith and at arm's length. Subject to the Court's review and approval, these efforts have resulted in an agreement to settle this action in lieu of a trial on the merits. *See* Exh. 1.

11. A proposed class settlement will be preliminarily approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006). In evaluating whether this burden is met, courts in this District consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel,* 463 F.3d at 653; *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). A court must not focus on an individual component of the compromise but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199.

4

12.     Class Counsel, the CTU, and the Board agree that the terms of the proposed settlement satisfy each of these factors.

13.     First, Class Counsel and the CTU recognize that, in the absence of an approved settlement, Plaintiffs would face uncertain prospects, including trial and appellate proceedings that would consume years of time and resources, presenting the Named Plaintiffs and the Certified Class with ongoing litigation risks. Considering the risks and the benefits of settlement, the Parties have decided to settle the Litigation as provided herein. Class Counsel, the CTU and the Named Plaintiffs believe that the settlement set forth in this Settlement Agreement serves the best interest of the Class Members based on all the facts and circumstances, including the risk of significant delay and an adverse decision on the merits, as it provides prompt and certain relief for the Certified Class and the Settlement Class, as described in paragraph 21, below.

14.     Second, continued litigation would likely be expensive and protracted. As noted above, on March 17, 2021, the Court denied the Parties' cross motions for summary judgment. As the result of that order, the following claims will proceed to trial absent a settlement: (a) Plaintiffs' claim that the Board engaged in intentional race discrimination by engaging in a pattern or practice of selecting schools with high percentages of African-American teachers and PSRPs for turnarounds instead of similarly situated schools with high percentages of white teachers and PSRPs, (b) Plaintiffs' claim that in selecting schools for turnaround, the Board engaged in unintentional discrimination by using a facially neutral policy that had a disparate

impact on African-American teachers and PSRPs, and (c) the Board's defenses that it had a legitimate business reason for the turnarounds and that it had no equally effective, less discriminatory alternative to the turnarounds. Plaintiffs anticipate that that the matter would be tried in two phases. At the first phase, both a jury and the Court would determine the liability of the Board for its turnaround practices. In the second phase, assuming Plaintiffs prevailed at the first phase, each African-American teacher and PSRP adversely impacted by the Board's pattern and practice of turnarounds would present evidence concerning their individual damages. Proceedings during these two phases, plus any appeals, would be very time consuming and expensive.

15.    Third, Class Counsel is not aware of any opposition to the settlement at this time.

16.    Fourth, Class Counsel has substantial experience with Title VII class actions and believes this Agreement to be fair, reasonable, and adequate with respect to the interests of the Named Plaintiffs and the Class Members, and that this Agreement should be approved by the Court pursuant to Federal Rule of Civil Procedure 23.

17.    Fifth, the Parties have conducted extensive and comprehensive discovery, investigation and preparation for trial in this matter, now going into the tenth year of this contested Litigation. The Parties took approximately twenty-seven (27) depositions of fact, Fed. R. Civ. P. Rule 30(b)(6) representatives and expert witnesses, exchanged tens of thousands of pages of documents and

substantial amounts of electronically stored data, and produced approximately ten expert reports by five separate experts.

18.     Finally, the terms of the proposed Settlement Agreement are fair, reasonable and adequate. The major terms of the Settlement Agreement are highlighted below.

19.     As part of the settlement, Plaintiffs have also filed an unopposed motion to certify a class for the purposes of settlement only under Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure (the "Settlement Class"). Exh. 1, ¶ 2.10. The Parties have requested that the Court certify a Settlement Class defined as follows:

> All African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," in the 2013 and/or 2014 calendar years.

20.     Assuming the Court certifies the Settlement Class, a Notice of Class Certification and Settlement will be mailed to each member of the Settlement Class by a third-party Settlement Administrator. The members of the Settlement Class have been identified and that information has been provided to Class Counsel. Members of the Settlement Class will be given the option to opt-out of the Class. Exh.1, ¶ 7.4.

21.     The Settlement Agreement provides that the Board shall pay or cause to be paid Nine Million, Two Hundred Fifty Thousand Dollars, and Zero Cents ($9,250,000.00) plus the costs of settlement administration to settle and satisfy the

claims in this Litigation. Exh. 1, ¶ 4.1(a). This amount will be divided as follows provided the Court finally approves the Settlement:

A. The total gross amount of Five Million, One Hundred and Seventy-Five Thousand Dollars, and Zero Cents ($5,175,000.00) allocated for the payment of all individual monetary awards to Eligible Class Members, as described above in paragraphs 3 and 19, above, who timely file valid claims forms and releases. Exh. 1, ¶ 4.1(b)(i). These awards will be determined by Class Counsel based on a Distribution Formula, which will be submitted to the Board and to the Court under seal prior to final approval. The final Distribution Formula will be approved by the Court after receipt of all of the claim forms. Exh. 1, ¶ 5.2(d). The Distribution Formula will be based on the following factors: (a) whether the Eligible Class Member was a paraprofessional, probationary appointed teacher, tenured teacher, or teacher with no tenure status; (b) whether the Eligible Class Member was reemployed by the Board, able to find work at another school, unable to find work, or retired; (c) whether the Eligible Class Member was subject to a Turnaround in 2012, 2013, and/or 2014; and (d) the non-monetary impact the turnaround had on the Class Member. Exh. 1, ¶ 5.2(e).

B. The total gross amount of Seventy-Five Thousand Dollars and Zero Cents ($75,000.00) allocated to the three Named Plaintiff as Named Plaintiff Enhancement Payments for serving as Class Representatives and their participation in this litigation. Exh. 1, ¶ 4.1(b)(ii). Each Named Plaintiff expended a great deal of time and effort on this case over a period of many years, including filing EEOC charges, filing this lawsuit, appearing for depositions, and responding to the Board's written discovery requests. In addition, the Named Plaintiffs will be entitled to participate in the claims process described in the Settlement Agreement. Exh. 1 ¶ 4.1(b)(iii). The incentive awards are well within the range courts in this circuit approve. *See, e.g.*, *Siemer v. Quizno's Franchise Co. LLC*, No. 07 C 2170, 2010 WL 3238840, at *3 (N.D. Ill. Aug. 13, 2010) (approving $50,000 incentive award); *Porter v. Pipefitters Ass'n Loc. Union 597*, No. 12-cv-9844, Dkt. 254 at 11 (N.D. Ill. Nov. 24, 2020) (approving $35,000 incentive award); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving $25,000 incentive award); *Craftwood Lumber Co. v. Interline Brands*, Inc., No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (same); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *17 (N.D. Ill. Feb. 28, 2012) (same).

C. An amount to be determined by the Court of no greater than Four Million Dollars and Zero Cents ($4,000,000.00), allocated to pay Class Counsel's and Counsel for the CTU's reasonable attorneys' fees and costs. Exh. 1, ¶ 4.1(b)(iii). Class Counsel and Counsel for the CTU have incurred more than Four Hundred Thousand Dollars ($400,000) in out-of-pocket costs and expenses to date. In addition, Class Counsel and Counsel for the CTU have incurred more than Four Million Dollars ($4,000,000 in attorneys' fees to date and expect to incur a minimum of an additional Seventy-Five Thousand Dollars to One Hundred Thousand Dollars ($75,000 to $100,000) in fees as they oversee the claims process and monitor the Settlement Agreement and the Settlement Administrator. The attorneys' fees requested are within the range of class action contingency fee agreements and are a substantial reduction of the actual attorneys' fees and costs incurred by Class Counsel and Counsel for the CTU in this matter. The Board has agreed that it will not contest Class Counsel's and Counsel for the CTU's request for attorneys' fees and costs so long as the amount requested does not exceed Four Million Dollars ($4,000,000).

D. The Board shall cause the costs of settlement administration to be paid pursuant to a signed, enforceable agreement for third-party funding.

22. Once paid, no portion of the settlement funds will be returned to the Board except as directed by Section 18.2(d). In the event that any portion of the Net Settlement Fund, including accrued interest, has not been distributed as required by this Order after a period of 120 days has elapsed from the date on which the settlement checks were mailed by the Settlement Administrator, then such remaining amounts from the Settlement Fund shall be provided as a *cy pres* designation to Grown Your Own Teachers. Exh. 1, ¶ 5.2(h). Grow Your Own Teachers is a non-profit organization that serves the Chicago area to further the education of minorities enrolled in a program that can lead to a teaching certificate or employment at Chicago Public Schools.

23. Within twenty-one (21) days of the Effective Date, the Board will pay or cause to be paid by wire transfer and/or check the Settlement Payment into an account held in trust and administered by Class Counsel as set forth in the paragraph below ("Funding Date"). Exh. 1, ¶ 4.2(c). This shall establish and constitute the Settlement Fund for the purpose of providing monetary awards to the Named Plaintiffs, Eligible Class Members and payment of Court-approved attorneys' fees and costs to Class Counsel. Class Counsel will use their best efforts to establish an account that earns interest on the settlement funds and does not incur monthly fees. Any interest earned on the settlement funds net of any fees and

11

taxes, if any, will be added to the amount to be distributed to the Class Members. Exh. 1, ¶ 4.2(c).

24.    To expedite funding of the settlement, Class Counsel, as trustees of the Class Settlement Trust Fund, will obtain an EIN and open a bank account in the name of the trust at Wintrust Bank as soon as possible after preliminary approval is granted. The Board may elect to fund its $1.7 million portion of the settlement fund in the current fiscal year (ending June 30, 2022). In the event that the Board funds in the current fiscal year, and if final approval is not granted or if an appeal is filed as specified in ¶ 18.2(d) of the Settlement Agreement, the Parties shall move for an order directing transfer of funds back to the Board.

25.    The Settlement Agreement also provides an opportunity for members of the Class to object to the settlement at an evidentiary Fairness Hearing. Upon preliminary approval of the Settlement Agreement, a Notice of Settlement (for the Class certified in 2015) or a Notice of Class Certification and Settlement (for the Settlement Class certified by the Court pursuant to the Settlement Agreement) will be mailed to all Class Members using information provided by the Board. Exh. 1, ¶ 7.2.

26.    By entering into this Settlement Agreement, no Party makes any admission regarding any claims or potential claims or any defenses thereto.

27.    The Parties propose that, upon Final Approval of the Settlement Agreement, this Court enter an order detailing and approving the terms of the Settlement Agreement and order the Parties to comply with the terms of the

Settlement Agreement, the material terms of which will be incorporated in the Final Approval Order.

28.    The Parties anticipate that upon its entry and final approval by this Court, this Settlement Agreement shall be final and binding upon the Class, the Parties, their successors, and assigns and shall release all claims in these cases to the extent allowed under Rule 23 of the Federal Rules of Civil Procedure.

29.    The Board agrees with the relief sought through this Motion, including the preliminary approval of the Settlement Agreement and supports effectuating the terms of the Settlement.

30.    The Parties have prepared a proposed order granting preliminary approval and submitted it to the Court's proposed order inbox.

WHEREFORE, the Parties respectfully request that the Court enter an Order preliminarily approving the Settlement Agreement and form, content, and method of notice set forth therein and directing the Parties to proceed with the Settlement as set forth in the proposed Order submitted to the Court.

Respectfully submitted,

For PLAINTIFFS and the CLASSES

/s/ Patrick Cowlin
Robin Potter
Patrick Cowlin
Fish Potter Bolaños, P.C.
111 East Wacker Drive, Suite 2300
Chicago, IL 60601
(312) 861-1800
rpotter@fishlawfirm.com
pcowlin@fishlawfirm.com

/s/ Randall D. Schmidt
EDWIN F. MANDEL LEGAL AID CLINIC
  OF THE UNIVERSITY OF CHICAGO
  LAW SCHOOL
6020 South University Avenue
Chicago IL 60637
(773) 702-9611
r-schmidt@chicago.edu


Dated: April 8, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. All counsel of record for Defendants are registered CM/ECF users and service will be accomplished by the CM/ECF system.


/s/ Patrick Cowlin
Patrick Cowlin

15