# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO TEACHERS' UNION, LOCAL 1, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case Nos. 12-cv-10311, 15-cv-8149 |
| v. | ) ) | Judge Sara L. Ellis |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, a body politic and corporate, | ) ) ) | Magistrate Judge Young Kim |
| Defendant. | ) ) | |

## CLASS ACTION SETTLEMENT AGREEMENT

**1. INTRODUCTION**

1.1     Subject to approval by the United States District Court for the Northern District of Illinois, this Settlement Agreement sets forth the full and final terms by which the Chicago Teachers Union, Local 1, American Federation of Teachers, AFL-CIO ("CTU"[1]); Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr. (collectively, "Named Plaintiffs"), on behalf of themselves and certain African-American teachers and paraprofessionals ("PSRPs"), employed by the Board of Education of the City of Chicago ("Board"); and the Board settle and resolve all claims that have been raised in the Litigation.

**2. NATURE AND RESOLUTION OF THIS CASE**

2.1     On December 26, 2012, the CTU and the Named Plaintiffs filed a Class Action Complaint (Case No. 12-cv-10311) in the United States District Court for the Northern District of Illinois asserting individual and class claims of race discrimination under Title VII of the Civil

---

[1] Capitalized terms have the meaning defined in this Agreement.

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, against the Board on behalf of African-American persons employed by the Board as teachers and PSRPs in any school or attendance center subject to reconstitution ("turnaround") by the Board on or after the 2012 calendar year, after filing charges with the United States Equal Employment Opportunity Commission ("EEOC")(the "2012 Case"). On March 13, 2013, the Board answered the complaint in the 2012 Case, denying all material allegations, denying any liability to any plaintiff and asserting affirmative defenses.

2.2     On August 26, 2013, the Named Plaintiffs moved for class certification, which the Board opposed. On May 27, 2014, this Court declined to certify a class. Dkt. 103, 104. On August 7, 2015, the United States Court of Appeals for the Seventh Circuit reversed this Court's decision. Dkt. 163. Subsequently, this Court certified a class of African-American teachers and PSRPs under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, defined as follows:

> All African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," in the 2012 calendar year.

Dkt. 173.

2.3     On September 16, 2015, the CTU and Edward Scott filed a Class Action Complaint (Case No. 15-cv-8149) in the United States District Court for the Northern District of Illinois asserting individual and class claims of race discrimination under Title VII, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, against the Board on behalf of African American persons employed by the Board as teachers and PSRPs in any school or attendance center subject to turnaround by the Board during

the 2013 and 2014 calendar years (the "2015 Case"). The Board answered the Complaint in the 2015 Case on November 30, 2015, denying all material allegations, denying any liability to any plaintiff and asserting affirmative defenses. On December 9, 2015, the 2012 and 2015 Cases were consolidated. On June 14, 2016, Mr. Scott was dismissed as a named plaintiff and the CTU remained as a plaintiff in its associational capacity, seeking only declaratory and injunctive relief. Dkt. 37. Plaintiffs did not seek to certify a class in the 2015 Case and no class has ever been certified in that case.

2.4     The Parties have conducted extensive and comprehensive discovery, investigation and preparation for trial in this matter, now in the 10th year of this contested litigation. The Parties took approximately twenty-seven depositions of fact, Rule 30(b)(6) representatives and expert witnesses; exchanged tens of thousands of pages of documents and substantial amounts of electronically stored data; and produced approximately ten expert reports by five separate experts. The Parties also filed cross motions for summary judgment, both of which the Court denied. Dkt. 314. The CTU, the Named Plaintiffs, the Certified Class and the Settlement Class (through Class Counsel) and the Board recognize that, in the absence of an approved settlement, the Parties would face uncertain prospects, including trial and appellate proceedings that would consume years of time and resources, presenting each of them with ongoing litigation risks. Considering such risks and the benefits of settlement, the Parties have decided to settle the Litigation as provided herein. Class Counsel and the Named Plaintiffs believe that the settlement set forth in this Agreement serves the best interest of the Class Members based on all the facts and circumstances, including the risk of significant delay and an adverse decision on the merits, as it provides prompt relief for the Class. They further believe this Agreement to be fair, reasonable, and adequate with respect to the interests of the Named Plaintiffs and the Class Members and that this Agreement should be

approved by the Court pursuant to Federal Rule of Civil Procedure 23(e)(2). The Board agrees that the Agreement represents a fair and reasonable resolution of the 2012 and 2015 Cases in light of the expense and risk of continued litigation.

2.5     It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims that exist between them arising from the Litigation.

2.6     It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims against all Released Parties and a dismissal of all pending actions covered by the Released Claims.

2.7     On December 15, 2021, the Board approved the Board Report relating to the settlement, which is available at: https://www.cpsboe.org/meetings/board-actions/2324. As part of that approval, the Board approved funding of $1.7 million of a $9.25 settlement.

2.8     The Board has a signed enforceable agreement for third-party funding of the remainder of the Gross Settlement Payment and payment of the costs of the Settlement Administrator.

2.9     Class Counsel will file a motion, which the Board will not oppose, to certify a class for the purposes of settlement only under Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, defined as follows:

> All African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," in the 2013 and/or 2014 calendar years.

2.10    The Board denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief, and all other forms of relief, as well as the class allegations and individual claims asserted in the Litigation, whereas the Named Plaintiffs, CTU, Certified Class, and Settlement Class contend their claims are meritorious. The Parties have agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void in its entirety or the Effective Date does not occur, the Parties do not waive, but rather expressly reserve, all rights to challenge or prosecute any and all claims and allegations asserted by the CTU or the Named Plaintiffs for themselves and on behalf of the Class in the Litigation, and all defenses alleged by the Board, upon all procedural and substantive grounds, and to assert any and all other potential defenses or privileges, including contesting the certification of a class. The Parties agree that the Parties retain and reserve these rights, and they agree not to take a position to the contrary. Additionally, neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; or (c) is or may be deemed to be used as an admission or evidence of the appropriateness of the certification of any class.

2.11    Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Agreement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

3.      **GENERAL TERMS OF THE SETTLEMENT AGREEMENT**

3.1      *Definitions.* The terms described below shall have the meanings defined in this Section wherever used in this Agreement and in all of its exhibits, including the Settlement Notice.

(a)      The "Board" means defendant Board of Education of the City of Chicago.

(b)      "Certified Class" means the class previously certified in the 2012 Case, and defined as all African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the CTU and the Board, in any school or attendance center subjected to reconstitution, or "turnaround," in the 2012 calendar year. The "Certified Class" does not include the single individual who falls within this definition, but who timely elected to opt out.

(c)      "Class Counsel" or "Counsel for the Class" means the law firm of Fish Potter Bolaños, P.C., formerly known as Potter Bolaños LLC, and the Edwin F. Mandel Legal Aid Clinic.

(d)      "Class Members" are, collectively, all African American persons employed by the Board of Education of the City of Chicago as a teacher or PSRP, as defined in the labor agreement between the CTU and the Board, in any school or attendance center subjected to reconstitution, or "turnaround," during the 2012, 2013, and/or 2014 calendar years who did not opt out of the Certified Class or the Settlement Class. "Class Members" includes all members of the Certified Class and the Settlement Class.

(e)      "Class Member Payments" means the payments made to Eligible Class Members pursuant to Paragraph 4.1(b)(i) of this Agreement and the Distribution Formula.

DocuSign Envelope ID: E121D5AF-B739-45D9-B5E6-BB9A81676168

(f)     "Class Monetary Awards Settlement Fund" means the monetary amount provided to WinTrust Bank, 231 S. LaSalle Street, 2nd Floor, Chicago, Illinois 60604, pursuant to Paragraph 4.2.

(g)     Class Settlement Trust Fund" means an irrevocable trust created under Illinois law that satisfies the requirements of a qualified settlement fund pursuant to the Internal Revenue Code Section 1.468B-1 (26 C.F.R §1-468B-1).

(h)     "Counsel for the Board" means the law firm of Taft Stettinius & Hollister, LLP.

(i)     "Counsel for the CTU" means the law firm of Fish Potter Bolaños, P.C. formerly known as Potter Bolaños LLC.

(j)     "Court" means the United States District Court for the Northern District of Illinois.

(k)     The "CTU" means plaintiff Chicago Teachers Union, Local 1, American Federation of Teachers, AFL-CIO.

(l)     "Distribution Formula" means the formula that will be used to allocate the Net Settlement Fund to Eligible Class Members who timely submit completed Claims Forms. The Distribution Formula will compensate Class Members solely for garden variety emotional distress damages as defined by Seventh Circuit precedent. The Distribution Formula will be based on the following factors: (a) whether the Class Member was a paraprofessional, probationary appointed teacher, tenured teacher, or teacher with no tenure status; (b) whether, following the turnaround, the Class Member was reemployed by the Board, able to find work at another school, unable to

DocuSign Envelope ID: E121D5AF-B739-45D9-B8E6-BB9A81676168

find work, or retired; (c) whether the Class Member was employed at a school that was subject to a turnaround in 2012, 2013, and/or 2014; and (d) the non-monetary impact the turnaround(s) had on the Class Member. The Distribution Formula will be applied objectively by Class Counsel and all proposed Individual Monetary Awards under the Distribution Formula will be filed under seal for approval by the Court.

(m)     "Effective Date" means the date upon which all of the following have occurred: (1) entry of an order or orders by the Court certifying the Settlement Class for the purposes of settlement only consisting of all African American persons employed by the Board as a teacher or para-professional staff, as defined in the labor agreement between the CTU and the Board, in any school or attendance center subjected to reconstitution, or "turnaround," during the 2013 and/or 2014 calendar years; (2) entry of an order or orders by the Court granting Final Approval to the Agreement, approving the payment of attorneys' fees and costs, and dismissing the Litigation with prejudice; (3) the expiration of the period for the Board to withdraw from the Agreement in accordance with Section 9 below (*i.e.*, 28 days from the deadline for submission of Request for Opt Out form by Settlement Class Members); and (4) the completion of the time for appeal and/or the resolution of any appeal that may be filed.

(n)     "Eligible Class Members" means the Certified Class Members and those Settlement Class Members who do not timely opt out of the Agreement pursuant to the terms of the Preliminary Approval Order and who timely submit a Claim Form pursuant to the terms of the Agreement and the Preliminary Approval Order and who have not previously released the Released Claims.

(o)     "Fairness Hearing" means the special hearing before the Court that occurs after the Preliminary Approval Date and before entry of the Final Approval Order to determine whether the proposed Settlement is fair.

(p)     "Final Approval Date" or "Final Approval" means the date of entry of the Final Approval Order for this Settlement.

(q)     "Final Approval Order" means the Order entered by the Court following the Fairness Hearing granting final approval of the terms of this Agreement, approving the payment of attorneys' fees, attorneys' costs, approving the Named Plaintiff Enhancement and dismissing the Litigation with prejudice.

(r)     "Gross Settlement Payment" means the amount of Nine Million Two Hundred Fifty Thousand Dollars and Zero Cents ($9,250,000.00). The maximum amount of the Board's contribution thereof shall be One Million Seven Hundred Thousand Dollars and Zero Cents ($1,700,000.00) and the Board will cause the remaining balance of Seven Million Five Hundred Fifty Thousand Dollars and Zero Cents ($7,550,000.00) to be funded by certain third-party funding. Except as noted below in this paragraph, this amount shall be the maximum settlement amount pursuant to the Agreement, inclusive of all other payments necessary to implement this Agreement and dismiss the Litigation with prejudice, including all attorneys' fees and costs, Named Plaintiff Enhancement Payments, Class Member Payments, and employee and employer side payroll taxes and pension contributions, to the extent that any such payroll taxes or pension contributions are deemed required by any state or federal agency or Court. Notwithstanding the foregoing, the Board shall pay or cause all reasonable costs of the Settlement Administrator to be paid.

(s)     "Individual Monetary Award" means the award from the Net Settlement Fund for which each Eligible Class Member is eligible based upon the terms of this Agreement and the Distribution Formula.

(t)     "Litigation" means collectively, the cases captioned Chicago Teachers Union, Local 1, et al. v. Board of Education of the City of Chicago, Case No. 12-cv-10311 (N.D. Ill.), and Chicago Teachers Union, Local 1, et al. v. Board of Education of the City of Chicago, Case No. 15-cv-8149 (N.D. Ill.).

(u)     "Named Plaintiffs" means, collectively, class representatives Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr. and "Plaintiffs" means the Named Plaintiffs and the CTU.

(v)     "Named Plaintiff Enhancement Payment" means the award paid from the Gross Settlement Payment in the amount of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) each ($75,000.00 total) to the three (3) Named Plaintiffs for their service as class representatives.

(w)     "Net Settlement Fund" means the Gross Settlement Payment less the Named Plaintiff Enhancement Payments and Court-approved attorneys' fees and costs/expenses.

(x)     "Parties" means the Plaintiffs and the Board.

(y)     "Preliminary Approval Order" means the Orders to be entered by the Court certifying the Settlement Class, preliminarily approving the terms of this Agreement, and finding that the terms of the Settlement Agreement appear sufficiently fair, reasonable, and adequate to the Class as a whole to warrant notice of the proposed settlement to the Class, an opportunity for

Class Members to object, an opportunity for Settlement Class Members to opt out, and scheduling a Fairness Hearing to consider final approval of the Settlement Agreement and directing the mailing to the Class Members of the Settlement Notice.

(z)     "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

(aa)     "Released Claims" means any and all claims, demands, causes of action, fees, and liabilities, which any of the Named Plaintiffs, the CTU, the Certified Class, the Settlement Class and/or any Class Member ever had, now has, or may have against any of the Released Parties that were, or could have been, asserted based upon the allegations contained in the complaints filed in the Litigation. Specifically included in the Released Claims are any and all race discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. § 1981 ("Section 1983"), arising from any alleged conduct relating to turnarounds during the 2012, 2013, and 2014 calendar years. Furthermore, the Released Claims include all claims for monetary damages, injunctive, declaratory or equitable relief, costs and attorneys' fees, whether arising under Title VII, Section 1981, Section 1983, or under any other federal, state, local or common laws, or regulations arising out of the same transactions, series of connected transactions, occurrences, or nucleus of operative facts that form the basis of the race discrimination claims that were asserted in the Litigation.

(bb)     "Release of Claims" means the Release of Claims, attached hereto as Exhibit A-1 (Release by Class Members) and Exhibit A-2 (Release by Named Plaintiffs).

(cc)     "Released Parties" means the Board and all of its past, present, and future members, officers, employees, insurers, reinsurers, representatives and agents.

11

DocuSign Envelope ID: E121D5AF-B738-45DD-BBF6-BB9A81676168

(dd)    "Settlement Administrator" means Analytics Consulting LLC, which was selected by Class Counsel. The Settlement Administrator shall be assigned such settlement administration tasks as described in this Agreement. The Board shall pay or cause all reasonable fees and expenses of the Settlement Administrator to be paid.

(ee)    "Settlement Agreement" or "Agreement" means this Agreement and all exhibits attached to it.

(ff)    "Settlement Class" means the class the Parties will seek to have certified for settlement purposes only under Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure through the Preliminary Approval Order, and as described in Paragraph 2.9 above.

## 4.    MONETARY RELIEF

4.1    *The Gross Settlement Payment*.

(a)    No later than twenty-one (21) days after the Effective Date, the Board shall pay or cause to be paid a total of Nine Million Two Hundred Fifty Thousand Dollars and Zero Cents ($9,250,000.00) to the Class Settlement Trust Fund to fully settle and satisfy the claims in the Litigation as set forth below.

(b)    The Gross Settlement Payment shall be divided as follows provided the Court grants Final Approval of the Settlement and the Effective Date occurs:

i.    a total gross amount of Five Million One Hundred and Seventy-Five Thousand Dollars and Zero Cents ($5,175,000.00) allocated for the payment of all Individual Monetary Awards to the Eligible Class Members, as described in more detail in Paragraph 5.2;

DocuSign Envelope ID: E121D5AF-B738-45DD-BBE6-BB9A81676168

ii.     a total gross amount of Seventy-Five Thousand Dollars and Zero Cents ($75,000.00) allocated for Named Plaintiff Enhancement Payments, as described in more detail in Paragraphs 5.1 and 6.1;

iii.     an amount to be determined by the Court, of no greater than Four Million Dollars and Zero Cents ($4,000,000.00), allocated to pay Class Counsel's and Counsel for the CTU's reasonable attorneys' fees and costs, which include all attorneys' fees incurred by the CTU, the Named Plaintiffs, the Certified Class, the Settlement Class, and the Class Members in connection with seeking Court approval of the Settlement, overseeing the claims process, monitoring the Settlement Agreement and overseeing the services provided by the Settlement Administrator. The Board agrees it will not contest Class Counsel's request for attorneys' fees and costs so long as the amount requested does not exceed the amount described in this paragraph.

4.2     *The Class Settlement Trust Fund and Class Monetary Awards Settlement Fund.*

(a)     The Class Settlement Trust Fund will be an irrevocable trust under Illinois law once fully-funded in accordance with Paragraph 4.1(a) and shall constitute a qualified settlement fund pursuant to Internal Revenue Code Section 1.468B-1. It shall be created by Class Counsel upon entry of the Preliminary Approval Order and shall be administered by Class Counsel, as trustee to the Class Settlement Trust Fund, pursuant to Court order and in accordance with this Agreement.

(b)     In the name of the Class Settlement Trust Fund, upon the Court's entry of the Preliminary Approval Order, Class Counsel will open a bank account with WinTrust Bank to hold the Class Monetary Awards Settlement Fund. Such bank account will be interest bearing and require no payment of fees to the Bank to the extent it is possible. No later than twenty-one (21)

days after the Effective Date, the Board shall pay or cause to be paid via a check or checks delivered to Class Counsel and/or wire transfer to WinTrust Bank a sum of money totaling the Gross Settlement Payment for deposit into the interest-bearing account created by Class Counsel in the name of the Class Settlement Trust Fund. Any interest earnings shall be used to pay fees imposed by WinTrust Bank and taxes imposed on the Class Settlement Trust Fund, if any. Any amount in interest earnings in excess of the fees and taxes owed will be added to the Class Monetary Awards Settlement Fund and distributed to the Named Plaintiffs and the Eligible Class Members.

(c)     The Class Settlement Trust Fund described herein will be created and managed by Class Counsel as trustee and disbursed by the Settlement Administrator under the supervision of Class Counsel and pursuant to Court order. The Board will have no decision-making role, responsibilities or liabilities whatsoever with respect to the Class Settlement Trust Fund, including any allocation or distribution therefrom or the tax reporting for such distribution. Class Counsel, as trustee to the Class Settlement Trust Fund, agree that the Class Settlement Trust Fund will defend, indemnify and hold harmless the Released Parties with respect to all claims, demands, responsibilities, causes of action or liabilities of any nature or character asserted by any person or entity with respect to the Class Settlement Trust Fund, the Individual Monetary Awards and the Named Plaintiff Enhancement Payments, including any allocation, characterization of payment or distribution therefrom and the tax reporting for such distribution. The Parties agree that payments to the Eligible Class Members are payments solely for garden variety emotional distress. The Class Settlement Trust Fund's indemnification obligation includes all damages, double damages, fines, penalties, attorneys' fees, costs, interest, expenses, and judgments incurred by or on behalf of any of the Released Parties in connection with such claims, demands, subrogated interests, or causes

14

DocuSign Envelope ID: E121D5AE-B738-45DD-BBE6-BB9A81676168

of action. The Class Settlement Trust Fund will retain $50,000.00 of Class Counsel's award of attorneys' fees and costs until April 30, 2025 as funds available for the indemnification purposes described herein if necessary. The Released Parties agree to cooperate with the Class Settlement Trust Fund including providing and executing any necessary documents needed in defending against all claims, demands, deficiencies, penalties, assessments, executions, judgments or recoveries, fees and attorney's fees incurred by any Released Party arising out of, in connection with, relating to or as a result of the payments pursuant to the Agreement and to providing any necessary information to implement and/or administer the Settlement. Within five (5) days of receipt by the Released Parties of any notice(s) from the IRS, the Illinois Department of Revenue, or any other taxing authority regarding the payments made pursuant to this Settlement Agreement, the Released Parties agree to notify the Class Settlement Trust Fund through Randall D. Schmidt, as trustee, at the Edwin F. Mandel Legal Aid Clinic, 6020 S. University Ave., Chicago IL 60637, of the notice.

The Class Settlement Trust Fund has no obligation to pay the personal income tax due to any state or federal taxing body resulting from any Class Member's receipt of an Individual Monetary Award and/or Named Plaintiff Incentive Payment.

(d)     Upon payment of the amount set forth in Paragraph 4.1(a), the Board will have no further obligations to the Named Plaintiffs, the Certified Class, the Settlement Class, Class Members and the CTU pursuant to this Settlement other than as expressly set forth herein. The Board shall have no further responsibility or obligation to make any additional payments pursuant to this Settlement or the Litigation, including with respect to any attorneys' fees and costs of any of the Named Plaintiffs, the CTU or Class Counsel, except that the Board will cause the reasonable costs of the Settlement Administrator to be paid.

DocuSign Envelope ID: E121D5AF-B738-45DD-BBF6-BB9A81676168

4.3    The Settlement Administrator shall distribute the Class Monetary Awards Settlement Fund pursuant to the provisions described below. Such distribution shall occur on the time schedule described herein and pursuant to the orders of the Court.  The Court for good cause, may modify any of the deadlines set forth herein without further notice to the Class Members.

5.    **ALLOCATION AND DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS TO CLASS MEMBERS**

5.1    *Named Plaintiff Enhancement Payments.*

In exchange for signing the Release of Claims (**Exhibit A-2**), each Named Plaintiff will receive a Named Plaintiff Enhancement Payment in the amount of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00). The Named Plaintiff Enhancement Payments will be reported to the Internal Revenue Service as directed by Class Counsel.

5.2    *Claims Process for Distribution of Net Settlement Fund to Class Members.*

(a)    **Claims Filing Procedures for Settlement of Claims of Class Members and Named Plaintiffs**. Within twenty-one (21) days after receipt of the Class List and class contact information from Class Counsel, the Settlement Administrator shall mail a Claim Form, a Class Member Release, and a Form W-9 to all Class Members. Class Members shall be entitled to submit their claims to the Settlement Administrator, under penalty of perjury, in accordance with the procedures set forth on the Claim Form, attached as **Exhibit B**.

(b)    In order to receive an Individual Monetary Award from the Net Settlement Fund, a Class Member's Claim Form must be received by the Settlement Administrator within ninety (90) days of the initial mailing by the Settlement Administrator, as set forth in Paragraphs

5.2(a) and 7.2 hereof. Claim Forms received after that date shall not be eligible for payment, unless the Court determines that the reason for a late submission constitutes excusable neglect.

(c)     The Settlement Administrator will include with the Claim Form a Release in the form of **Exhibit A-1** or **Exhibit A-2** as appropriate. In order to be eligible for any award, Class Members must submit with their Claim Form a signed Release and a completed IRS Form W-9. The Settlement Administrator shall promptly forward all Claim Forms and Releases to Class Counsel.

(d)     **Distribution Formula.** In an effort to promote both fairness and efficiency, Class Counsel will propose a Distribution Formula, which shall be shared with the Court and the Board. Class Counsel shall file the proposed Distribution Formula under seal in conjunction with the Motion for Final Approval**,** and seek approval by the Court to use the Distribution Formula in making awards. If the Court approves the Distribution Formula, each Claim Form will be awarded points by Class Counsel upon their review and any necessary verification. Class Counsel may in their discretion verify certain information provided on the Claim Form, including with information provided by the Board.

(e)     The Distribution Formula shall be applied uniformly, will not be discretionary after Court approval, and may be amended only by Court Order. The Distribution Formula, which will compensate Eligible Class Members for alleged "garden variety" emotional distress damages, will be based on the following factors: (a) whether the Eligible Class Member was a paraprofessional, probationary appointed teacher, tenured teacher, or teacher with no tenure status; (b) whether Eligible Class Member was reemployed by the Board, able to find work at another school, unable to find work, or retired; (c) whether the Eligible Class Member was subject

17

to a turnaround in 2012, 2013, and/or 2014; and (d) the non-monetary impact the turnaround had on the Eligible Class Member. The total points awarded to all Eligible Class Members will be aggregated, and each Eligible Class Member's proportionate share of the total points will be determined by Class Counsel. Each Eligible Class Member shall then be allocated a commensurate proportion of the Net Settlement Fund by Class Counsel.

(f)     Class Counsel shall review and evaluate all Claim Forms and recommend Individual Monetary Awards for each Eligible Class Member from the Net Settlement Fund no later than sixty (60) days after the deadline for submitting Claims Forms. Class Counsel shall thereafter file with the Court under seal the recommended Individual Monetary Awards. The recommended Individual Monetary Awards, with individual names of each Eligible Class Member redacted, shall be provided to the Board and publicly filed with the Court. Within fourteen (14) days of approval of the Individual Monetary Award amounts by the Court, Class Counsel will provide the Settlement Administrator with the unredacted approved list of Individual Monetary Awards. The Settlement Administrator shall distribute the approved Individual Monetary Awards via check to each Eligible Class Member at the mailing address provided on the Claims Form (or as updated through the Claims Administrator) within thirty (30) days of receipt of the approved list of Individual Monetary Awards.

(g)     Individual Monetary Awards to Eligible Class Members will be reported to the Internal Revenue Services as directed by Class Counsel as trustee to the Qualified Settlement Fund. In the event that it is subsequently determined by a tax authority that any Class Member owes any personal income taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the Class Member(s) and the tax authorities, and that neither the CTU, the Board nor the attorneys for the Parties shall be

DocuSign Envelope ID: E121D5AF-B738-45DD-BEE6-BB9A81676168

responsible for the payment of such personal income taxes, including any interest and penalties. The CTU, the Board, and the attorneys for the Parties will cooperate in defending this Agreement and the payments made pursuant to this Agreement. No payments made to Class Members in this Agreement will be considered wages for any purpose, including for calculating, or recalculating, benefits provided by the Board under the terms or conditions of any employee benefit plan.

(h)     **Surplus Funds.** In the event that any portion of the Net Settlement Fund, including accrued interest, has not been distributed as required by this Settlement Agreement after a period of 120 days has elapsed from the date on which the settlement checks were mailed by the Settlement Administrator, then such remaining amounts from the Class Settlement Trust Fund shall be provided to Grow Your Own Teachers, a non-profit organization that serves the Chicago area to further education of minorities who are enrolled in a program that can lead to a teaching certificate or employment at Chicago Public Schools. Class Counsel, as trustee to the Class Settlement Trust Fund, shall direct the tax reporting of any payment to Grow Your Own Teachers.

(i)     **Late Claims**. For Claim Forms and Releases received after the filing deadline, Class Counsel shall notify late-filing Class Members that their claims are untimely and that they are not eligible for any monetary award. Class Counsel will notify the Court of all late Claim Forms and the Court may determine whether the Claim Form(s) shall be processed.

(j)     **Claims of Deceased Class Members.** Claims may be submitted on behalf of Class Members who have died provided that a legally authorized representative of their estate, possessing appropriate documentation (letters testamentary, Small Estate Affidavit, or the equivalent), timely submits the required Claim Forms, Release and documentation. In the event of

a deceased Class Member, any Individual Monetary Award shall be made payable to the estate of the deceased Class Member.

      (k)    **Previously Released Claims.** The Board has identified one (1) member of the Certified Class and three (3) members of the Settlement Class who have each signed separate settlement agreements stating that the Class Member released all claims or causes of action which they had against the Board and various Released Parties that arise out of or in connection with their employment with or separation of employment from, the Board. In the event that any one or more of these Class Members submit Claims Forms, the Settlement Administrator shall promptly notify Class Counsel and Counsel for the Board that the Class Member has submitted a Claim Form. Within seven (7) days of such notice, Class Counsel shall notify the Court that the Class Member has submitted a Claim Form. The Court shall thereafter schedule a court hearing and send, or authorize the Settlement Administrator to send, a notice to the Class Member. The notice to the Class Member will advise the Class Member that the Board objects to their receipt of an Individual Monetary Award because they signed a prior settlement agreement containing a release of claims against the Board and that, in order to receive an Individual Monetary Award, the Class Member must file a statement with the Court at least five days before the hearing explaining why the release contained in their prior settlement agreement should not prevent them from receiving an Individual Monetary Award and that they may attend the court hearing. The notice shall also advise the Class Member that the Court will decide the validity of the release and whether they are entitled to an Individual Monetary Award at or after the hearing. The Claims Administrator shall also transmit a copy of the settlement agreement executed by the Class Member containing the release to the Class Member. Class Counsel shall not take any position regarding the validity of any release, the adequacy of consideration, or otherwise, relating to the release(s).

DocuSign Envelope ID: E121D5AF-B738-45DD-BBE6-BB9A81676168

5.3     **Settlement Checks.** The face of each check sent to Eligible Class Members shall clearly state that the check must be cashed within sixty (60) days. All payments distributed by the Settlement Administrator shall be accompanied by a cover letter stating words in bold to the effect that "the check must be cashed within sixty days (60) or it will become void." Class Members will be solely responsible for any tax liability, penalties, and interest arising from the allocation of the Net Settlement Fund and the receipt of the Individual Monetary Award or Named Plaintiff Incentive Award.

## 6.      ATTORNEYS' FEES, LITIGATION COSTS, CLAIMS ADMINISTRATION COSTS, AND ENHANCEMENT PAYMENTS

6.1     As set forth above, subject to Court approval, the Settlement Administrator will pay, from the Class Monetary Awards Settlement Fund to each of the Named Plaintiffs, Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr., a Court-approved Named Plaintiff Enhancement Payment in the recommended amount of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) to each Named Plaintiff, or such other amount as the Court may approve. The Named Plaintiff Enhancement Payment must be approved by the Court. The Settlement Administrator will pay the aforementioned payments within thirty-five (35) days of the Effective Date.

6.2     Pursuant to Fed. R. Civ. P. 23(h), Class Counsel shall make a motion for reasonable attorneys' fees and costs incurred by Class Counsel in the Litigation and settlement administration, including the fees and costs in connection with seeking Court approval of the Settlement, the claims process, and monitoring the Settlement Agreement pursuant to the amount described in Paragraphs 4.1 and 7.1. Within thirty-five days of the Effective Date, the Settlement Administrator will pay from the Class Monetary Awards Settlement Fund the amount of attorneys' fees and costs

approved by the Court, not to exceed Four Million Dollars and Zero Cents ($4,000,000.00), less the Fifty Thousand Dollar ($50,000.00) holdback pursuant to Paragraph 4.2(c) hereof. Prior to the payment of attorneys' fees and costs, Class Counsel will provide the Settlement Administrator with Taxpayer Identification Numbers for Class Counsel and executed Form W-9s. Form 1099s shall be provided to Class Counsel for the payments made to Class Counsel.

6.3     To the extent the Court disallows, disapproves, or reduces the award of attorneys' fees and costs requested by Class Counsel to an amount lower than Four Million Dollars and Zero Cents ($4,000,000.00) and/or the Named Plaintiff Enhancement Payments to Named Plaintiffs, the Settlement will proceed, and this Agreement will be modified to reflect the amounts approved by the Court. Any amounts allocated as attorneys' fees and costs and/or Named Plaintiff Enhancement Payments under Paragraph 4.1 of this Agreement but not approved by the Court shall be allocated to the Net Settlement Fund, as defined in Paragraph 3.1(w).

6.4     The Board shall cause to be paid all reasonable Settlement Administrator costs, including, without limitation, all administrative costs associated with the creation of the Class Settlement Trust Fund, all reasonable costs to be paid to the Settlement Administrator, and all reasonable costs related to the issuance and mailing of notices and checks in accordance with this Agreement.

7.      **DUTIES OF THE SETTLEMENT ADMINISTRATOR, NOTICE, OBJECTIONS, EXCLUSIONS, AND FAIRNESS HEARING**

7.1     *Settlement Administrator's Duties*.

The Settlement Administrator shall (1) mail the Notice of Class Action Settlement (the "Settlement Notice") to members of the Certified Class Members; (2) mail the Notice of Class

DocuSign Envelope ID: E121D5AF-B738-45DD-BBE6-BB9A81676168

Certification and Class Action Settlement (the "Certification and Settlement Notice") to members of the Settlement Class Members; (3) mail Claim Forms, Class Member Releases, and IRS Form W-9s to Class Members; (4) establish a settlement website and post the Settlement Agreement, Settlement Notice, Complaints/Amended Complaints and the Board's Answers to the Complaints/Amended Complaints from the Litigation, a statement that a settlement has been reached to resolve the Litigation, and the contact information for the Settlement Administrator and Class Counsel on the website; (5) mail, receive and process Opt-Out forms to members of the Settlement Class; (6) receive completed Claim Forms and Class Member Releases; (7) seek additional information from Class Members or Class Counsel, when appropriate, and provide updated contact information for any Class Member to Counsel for the Board and Class Counsel; (8) receive awards information from Class Counsel and distribute Individual Monetary Awards to Class Members; (9) mail checks to Class Members and Class Counsel; and (10) mail applicable IRS Forms to Named Plaintiffs, Eligible Class Members and Class Counsel as directed by Class Counsel and effectuate any reporting to the Internal Revenue Service, State of Illinois, or other taxing authority relating to any payments of the Gross Settlement Fund; (11) provide notice in accordance with Paragraph 5.2(k), if necessary; and (12) any other duties necessary to carry out its responsibilities described in this Agreement.

7.2     *Class Lists and Notice*.

(a)     The Board has provided to Class Counsel an accurate list of all Class Members, including name, employee ID, job title, school and year in which the Class Member was subject to Turnaround, last-known address, and last-known telephone number in Microsoft Excel. Class Counsel will provide this information to the Settlement Administrator within seven (7) days of entry of the Preliminary Approval Order. The Settlement Administrator will maintain this list

in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may use it only for purposes of administering this Settlement. The Board will cooperate in updating the list, as needed by the Settlement Administrator and Class Counsel.

(b)     No later than twenty-eight (28) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall mail the Settlement Notice in substantively the form attached hereto as **Exhibit C**, and as approved by the Court, to members of the Certified Class by United States first-class mail postage prepaid. The Parties intend to provide actual notice to each Certified Class Member to the greatest extent practicable.

(c)     Along with the Settlement Notice, the Settlement Administrator shall mail to each Certified Class Member the Claim Form (attached hereto as **Exhibit B**), the Release (attached as **Exhibits A-1** and **A-2**), and an IRS Form W-9 by United States first-class mail postage prepaid.

(d)     No later than twenty-eight (28) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall mail the Certification and Settlement Notice in substantively the form attached hereto as **Exhibit D**, and as approved by the Court, to members of the Settlement Class by United States first-class mail postage prepaid. The Parties intend to provide actual notice to each Member of the Settlement Class to the greatest extent practicable.

(e)     Along with the Certification and Settlement Notice, the Settlement Administrator shall mail to each Settlement Class Member the Request for Opt Out form (attached hereto as **Exhibit E**), the Claim Form (attached hereto as **Exhibit B**), the Release (attached as **Exhibit A-1**), and an IRS Form W-9 by United States first-class mail postage prepaid.

24

(f)     At the time of the mailing, the Settlement Administrator will activate the settlement website.

(g)     In order to provide the best notice practicable, the Settlement Administrator will do the following before mailing the Settlement Notice: (1) run the list of all Class Members through the United States Postal Service's National Change of Address database ("NCOA"); and (2) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed), and credit bureaus.

(h)     If envelopes from the mailing of the Settlement Notice and other documents are returned with forwarding addresses, the Settlement Administrator will re-mail the Settlement Notice and other documents to the new address within three (3) business days, and will immediately provide Counsel to the Board and Class Counsel with the new address.

(i)     In the event that a Settlement Notice is returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid (i.e., the envelope is marked "Return to Sender") the Settlement Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Settlement Notice and other documents within three (3) business days of receiving the newly ascertained address and will provide Counsel to the Board and Class Counsel with the new address. If no updated address is obtained for that Class Member, the Settlement Notice and other documents shall be sent again to the Class Member's last known address. In either event, the

DocuSign Envelope ID: E121D5AE-B738-45DD-BBE6-BB9A81676168

Settlement Notice shall be deemed received once it is mailed for the second time unless the Class Member can demonstrate good reason why he or she did not receive it.

(j)      With respect to envelopes marked "Return to Sender," the Settlement Administrator may also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Class Members to obtain their current addresses.

(k)      The Settlement Administrator shall provide to Counsel for the Board and Class Counsel, at least ten (10) days prior to the Fairness Hearing, a list of Class Members to whom Settlement Notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

(l)      Class Counsel shall file with the Court, at least five (5) days prior to the Fairness Hearing, a declaration by the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Settlement Notice and other forms to Class Members.

7.3    *Objections*.

Class Member objections to this Settlement Agreement must be submitted in writing and must include a detailed description of the basis of the objection, including whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class. Objections must be filed with the Court, with copies served on the Settlement Administrator, Class Counsel, and Counsel for the Board, within forty-five (45) days after the Settlement Notice is mailed by the Settlement Administrator. The postmark date of the objection shall be the exclusive means for determining that an objection is timely. Class Members who fail to make objections in the manner

26

DocuSign Envelope ID: E121D5AE-B738-45DD-BBE6-BB9A81676188

specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement. No one may appear at the Fairness Hearing for the purpose of objecting to the Settlement Agreement without first having filed and served his or her objection(s) in writing within forty-five (45) days after the Notice was mailed to Class Members. Any lawyer representing a Class Member for the purpose of making objections must also file a Notice of Appearance with the Court by the objection deadline and must also serve copies by mail to Counsel for the Parties.

    7.4    *Exclusions.*

        (a)    Any Settlement Class Member who wants to opt out of the Settlement Class may file a timely Request for Opt Out pursuant to the provisions described in the Notice of Class Action Settlement by a date set by the Court, which will be approximately 35 days after the Notice was mailed to Class Members. Such written Request for Opt Out must contain the name, address, and telephone number of the person requesting exclusion, as described in the Request for Opt Out form (see **Exhibit E**). The Request for Opt Out must be personally signed by the Settlement Class Member who seeks to opt out. No opt-out request may be made on behalf of a group of Settlement Class Members. The Request for Opt Out must be sent by mail or courier to the Settlement Administrator so that it is actually postmarked (or received, if by courier) within the date set by the Court, which will be approximately 35 days after the Notice was mailed  by the Settlement Administrator. The postmark date of the mailing envelope shall be the exclusive means used to determine whether a Request for Opt Out has been timely submitted. Any person who timely submits such a Request for Opt Out shall be barred from participation in the Settlement and shall receive no benefit from the Settlement. The Settlement Administrator shall provide Class Counsel and Counsel for the Board with a copy of all Requests for Opt Outs on a weekly basis.

DocuSign Envelope ID: E121D5AF-B738-45DD-BBF6-BB9A81676188

(b)     Class Counsel shall file with the Court all timely submitted Requests for Opt Out. The Settlement Class will not include those individuals who file and serve a timely Request for Opt Out, and individuals who opt out are not entitled to any monetary award under this Settlement Agreement.

(c)     Class Counsel shall neither cooperate with nor represent any Settlement Class Member who opts out of the Settlement Class and files or continues a claim or lawsuit against the Board that relates in any manner to the allegations contained in the complaints filed in the Litigation.

(d)     The CTU, Class Counsel and the Named Plaintiffs agree that they shall specifically recommend that all Class Members participate in the Settlement and shall not encourage any Class Member to opt out of the Settlement Class. If any Class Member contacts the Board or its attorneys regarding the Settlement, the Board or its attorneys shall not discourage the Class Member from participating in the Settlement, shall not encourage any Class Member to opt out of the settlement, and shall direct the Class Member to Class Counsel.

7.5     *Fairness Hearing*.

Upon Preliminary Approval, the Court will set dates for Class Counsel to submit their petition for attorneys' fees and costs, and a date for the Fairness Hearing. The date will be set at the Court's convenience and at least 125 days after the date of Preliminary Approval.

## 8.     RELEASES

8.1     Every Certified Class Member and every Settlement Class Member who does not timely opt out of the Settlement Class shall have knowingly and voluntarily waived, released, discharged, and dismissed the Released Parties from the Released Claims with prejudice, with full

DocuSign Envelope ID: E121D5AF-B738-45DD-BBE6-BB9A81676188

knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved or with regard to any facts which are now unknown to them. The CTU, on behalf of itself and in its associational capacity, and each of the Named Plaintiffs knowingly waives, releases, discharges and dismisses the Released Parties from the Released Claims with prejudice, with full knowledge of any and all rights it may have, and each hereby assumes the risk of any mistake in fact in connection with the true facts involved or with regard to any facts which are now unknown to them.

8.2     The Parties and Class Members acknowledge that the covenants and promises made by the Board herein, including but not limited to the payment of the Gross Settlement Payment and the Individual Monetary Awards to Class Members, constitute adequate consideration in exchange for the release of Released Claims as defined in Paragraph 3.1(aa), (bb) and (cc) above.

8.3     The Named Plaintiffs acknowledge that the covenants and promises made by the Board herein, including, but not limited, to the Board's promise to pay the Named Plaintiff Enhancement Payments, constitute adequate consideration in exchange for the release of Released Claims as defined in Paragraph 3.1(aa), (bb) and (cc) above.

8.4     Nothing in this Settlement Agreement or the Release of Claims shall be construed to bar any claims of Class Members or the Named Plaintiffs based on or arising out of events occurring after the date of the Preliminary Approval by the Court of the Settlement Agreement.

## 9.     THE BOARD'S RIGHT TO WITHDRAW OR MODIFY THE AGREEMENT

9.1     The Board certifies and states that it has diligently searched and to its knowledge, no member of the Settlement Class has a pending lawsuit, claim or charge against the Board arising out of the 2013 and/or the 2014 Turnarounds. If a total of two (2) or more of the Settlement Class

DocuSign Envelope ID: E121D5AE-B738-45DD-BBE6-BB9A81676168

Members submit timely and complete Request for Opt Out forms pursuant to the date set by the Court pursuant to Section 7.4 herein and identified in the Request for Opt Out form and, the Board shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, subject only to all the provisions and time limits of this paragraph, to withdraw in writing from this Agreement or to modify this Agreement through further negotiations with Class Counsel. If the Board does withdraw in conformity with the provisions and time limits of this paragraph, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether the Board is entitled to withdraw from the Agreement and has validly done so. The Board shall have twenty-eight (28) days after the expiration of the deadline for submission of the Request for Opt Out forms pursuant to the provisions described in the Certification and Settlement Notice attached here as **Exhibit D** to withdraw from (or modify through negotiation and approval of the Court) this Agreement on the basis that a total of two (2) or more Settlement Class Members have submitted timely and complete Request for Opt Out forms.

9.2    Each calendar week the Settlement Administrator shall notify Counsel for the Board and Class Counsel by email of the number of individuals who have to that date submitted timely and complete Request for Opt Out forms pursuant to the provisions described in the Settlement Notice and Opt Out Form, and at the same time shall send to said Counsel by email or by overnight delivery copies of all the timely and complete Request for Opt Out forms which the Settlement Administrator has received.

## 10.    DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

10.1    Within five (5) days after the execution of this Agreement by all Parties and approval and finalization of all exhibits and motions contemplated by this Agreement, the Parties

DocuSign Envelope ID: E121D5AF-B738-45DD-BBE6-BB9A81676188

shall apply to the Court for the entry of a Preliminary Approval Order, which shall direct that the notices be mailed to all Class Members as set forth herein.

10.2    In the motion for preliminary approval, the Parties will submit to the Court this Agreement and attachments (specifically, the proposed forms of all notices and other documents as attached hereto necessary to implement the Agreement), and shall describe the terms of this settlement.

10.3    The Board shall provide notice of the proposed Settlement to appropriate state and federal officials in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715. In connection with such notice, Class Counsel represent that it is not feasible to provide the estimated proportionate share of the claims of Class Members residing in each state in accordance with 28 U.S.C. § 1715(b)(7)(A) because Class Counsel has not determined the Distribution Formula and the Parties do not know the level of participation of Class Members in the Settlement.

10.4    In computing any period of time prescribed or allowed by this Agreement, unless otherwise stated, such computation or calculation shall be made consistent with Federal Rule of Civil Procedure 6(a) as it exists on January 1, 2022.

## 11.    PARTIES' AUTHORITY

11.1    The signatories below represent that they are fully authorized to enter into this Agreement and settle the Litigation, and Class Counsel represent that they have the authority to settle this matter on behalf of all Named Plaintiffs, the Certified Class and the Settlement Class.

DocuSign Envelope ID: E121D5AE-B738-45DD-BBE6-BB9A81676168

11.2   The Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations, which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

The Parties acknowledge that they are participating voluntarily and knowingly in exchange for the consideration described herein.

## 12.   MUTUAL AND FULL COOPERATION

12.1   The Parties agree that they will fully cooperate with each other to accomplish the terms of this Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

12.2   The Parties acknowledge that third parties are the source of funds for part of the Gross Settlement Payment pursuant to a signed written contract with the Board.  In the event that there is a delay or disruption of this funding source, the Parties shall work together to secure the funding from the responsible third party.

## 13.   NOTICES

13.1   Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given on the day of personal service; the first day after overnight transport by a courier, including, but not limited to, FedEx or United Postal Service ("UPS"); and the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

| To Named Plaintiffs, CTU and the Class: | To the Board: |
|---|---|
| Patrick Cowlin<br>Fish Potter Bolaños, P.C.<br>111 East Wacker Drive, Suite 2300<br>Chicago, IL 60601 | John F. Kennedy<br>Heather A. Jackson<br>Taft Stettinius & Hollister LLP<br>111 East Wacker Drive, Suite 2800<br>Chicago, IL 60601 |

## 14.    MODIFICATION

14.1    This Agreement and its attachments may not be changed, altered, or modified, except in a writing signed by Counsel for the Board, Counsel for the CTU and Class Counsel on behalf of themselves, the Named Plaintiffs, the Settlement Class and the Certified Class, and approved by the Court.

## 15.    ENTIRE AGREEMENT AND SEVERABILITY

15.1    This Agreement and its attachments constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary, or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other document related to the Parties' settlement of the Litigation, the Parties intend that this Agreement shall be controlling.

15.2    It is the desire and intent of the Parties that the provisions and releases of this Agreement be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought. Accordingly, if any particular provision of, or release in this Agreement, including the Released Claims and General Release, shall be adjudicated by a court, or arbitral forum of competent jurisdiction to be illegal, invalid, prohibited, or unenforceable under any present or future law, and if the rights and obligations of any of the Parties under this Agreement will not be materially and adversely affected thereby, such provision or

DocuSign Envelope ID: E121D5AE-B738-45DD-BBE6-BB9A81676188

release shall be ineffective in that jurisdiction in which enforcement is sought, without invalidating the remaining provisions of, or releases in this Agreement, or affecting the validity or enforceability of such provision or release in any other jurisdiction in which enforcement may be sought. To this end, the provisions and releases of this Agreement are declared to be severable. Furthermore, in lieu of such invalid or unenforceable provision or release, there will be added automatically as a part of this Agreement, a legal, valid, and enforceable provision or release as similar in terms to such invalid or unenforceable provision or release as may be possible. Notwithstanding the foregoing, if such provision or release could be more narrowly drawn so as not to be invalid, prohibited, or unenforceable in the jurisdiction in which enforcement is sought, it shall, as to the jurisdiction in which enforcement is sought, be so narrowly drawn, without invalidating the remaining provisions or releases of this Agreement or affecting the validity or enforceability of such provision or release in any other jurisdiction in which enforcement is sought.

## 16.    CHOICE OF LAW/JURISDICTION

16.1    This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Illinois, both in its procedural and substantive aspects. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

16.2    The Parties agree that the Final Approval Order shall incorporate by reference the terms and conditions of this Agreement.

## 17. COUNTERPARTS

17.1    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and their respective counsel.

## 18. VOIDING THE AGREEMENT

18.1    In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason (except for a modification of the attorneys' fees and costs and/or the Named Plaintiff Enhancement Awards, as set forth in this Agreement), then this Agreement shall be null and void in its entirety (except for those provisions relating to non-admissibility and non-admission of liability), unless expressly agreed in writing by all Parties, the following shall apply: (i) the Agreement's terms and provisions shall have no further force and effect and shall not be used in the Litigation, in any other proceeding or otherwise, for any purpose; (ii) the negotiations leading to the settlement set forth in this Agreement will not be used as evidence for any purpose; and (iii) the Parties shall retain the right to prosecute or challenge all claims and allegations, to assert all applicable defenses, and to support or dispute the propriety of class action certification or trial on all applicable grounds.

18.2    In the event this Agreement becomes null and void for any reason, the Parties will proceed as follows:

(a)    The Litigation will resume unless the Parties jointly agree to: (i) seek reconsideration or appellate review of the applicable decision denying judicial approval, or (ii) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

During such time, the Parties agree to maintain the confidentiality of the negotiations and this Agreement to the fullest extent permitted by law and previous settlement discussions.

(b)     In the event any reconsideration and/or appellate review is sought and thereafter denied, or the Parties do not renegotiate the Settlement and obtain Court approval of the renegotiated settlement, the Parties shall have no further rights or obligations under this Agreement.

(c)     If Final Approval never occurs, the Parties will retain all rights and defenses in the Litigation, including without limitation the Board's right to contest whether this Litigation should have been certified as a class action and to contest the merits of the claims being asserted by Plaintiffs in the Litigation. All negotiations and information and materials pertaining in any way to this Agreement or the settlement of the Litigation will be inadmissible and remain confidential to the fullest extent permitted by law and to the extent they are not already a matter of public record.

(d)     To the extent that the Board elects to pay its portion of the Gross Settlement Payment in advance of the Effective Date, in the event of either an appeal or if Final Approval does not occur on or before August 30, 2022, then upon motion by one or both of the Parties, the Court shall enter an order directing Class Counsel as trustee to the Class Settlement Trust Fund to return the full amount held therein to the Board in a manner directed by the Board.

(e)     Notwithstanding the foregoing, if any order entered in this Litigation results in materially modifying, setting aside, or vacating any portion of the Agreement, with the exception of any modification of the amount of attorneys' fees and costs to be paid to Class Counsel or the amount of the Enhancement Payments to be paid to the Named Plaintiffs, each

DocuSign Envelope ID: E121D5AF-B738-45DD-BBE6-BB9A81676188

party adversely impacted by the order shall have the absolute right, at its sole discretion, to treat such order as an event permanently preventing judicial approval. To exercise this right, the party must inform the other party, in writing, of its exercise of this right within fourteen (14) days of receiving notice of any order modifying, setting aside, or vacating any portion of this Agreement. Before either party elects to exercise its right to treat such order as an event permanently preventing judicial approval, that party must meet and confer in good faith with the other party to determine if an agreement can be reached modifying this settlement to the mutual satisfaction of the Parties.

(f)     If this Settlement Agreement is deemed void pursuant to Section 18, then the time from the date of execution of this Agreement to the date the Agreement is deemed void shall be excluded from any back pay calculation.

ENTERED AND APPROVED FOR DONALD GARRETT, ROBERT GREEN, VIVONELL BROWN, THE CERTIFIED CLASS, AND THE SETTLEMENT CLASS:

_7F0C89D0DD29414..._

Robin Potter
Patrick Cowlin
Fish Potter Bolaños, P.C
111 East Wacker Drive, Suite 2300
Chicago, IL 60601
rpotter@fishlawfirm.com
pcowlin@fishlawfirm.com

_9723C299DFCD4C5..._

Randall D. Schmidt
Edwin F. Mandel Legal Aid Clinic
  of The University of Chicago Law School
6020 South University Avenue
Chicago IL 60637
(773) 702-9611
(773) 702-2063 (fax)
r-schmidt@uchicago.edu

ENTERED AND APPROVED FOR THE CHICAGO TEACHERS UNION:

_AC1327B78C1E47F..._

Chicago Teachers Union
1901 W. Carroll Ave.
Chicago, IL 60612

ENTERED AND APPROVED FOR THE BOARD OF EDUCATION OF THE CITY OF CHICAGO:

_571EC59C33144C5..._

Joseph Moriarty, General Counsel
Board of Education of the City of Chicago
1 North Dearborn St., Suite 900
Chicago, Illinois 60602

**EXHIBIT A-1**

**RELEASE OF CLAIMS**

I,_____, for and in consideration of the Individual Monetary Award that is payable to me pursuant to the terms of the Settlement Agreement preliminarily approved by the Court in *Chicago Teachers Union, Local 1, et al. v. Board of Education of the City of Chicago*, Case No. 12-cv-10311 (N.D. Ill.), and *Chicago Teachers Union, Local 1, et al. v. Board of Education of the City of Chicago*, Case No. 15-cv-8149 (N.D. Ill.) (the "Lawsuits"), and the dismissal of the Lawsuits, on behalf of myself, my heirs, assigns, executors, and agents, do hereby forever release, waive, remise, acquit, and discharge the Chicago Board of Education and all of its past, present, and future members, officers, employees, insurers, reinsurers, representatives and agents (collectively, the "Released Parties"), from any and all claims and causes of action of any kind, known or unknown, which I now have or ever have had under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq*.; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and any other similar or related federal, state, or local employment discrimination or civil rights law, regulation, or ordinance arising from or related to the underlying facts and claims that were asserted in these cases. This release does not release any other claims, grievances or lawsuits.

I acknowledge that I am represented by Class Counsel and also have had the opportunity to consult with Class Counsel and my personal attorneys concerning this release and the Settlement Agreement, and I have either consulted with my attorneys or I have chosen not to exercise my right to do so.

I understand that the Released Parties are not admitting any violation of my rights under statutory or common law. I also understand that this release is effective only so long as the Court grants final approval of the settlement and the settlement award approved by the Court is tendered to me. Should the Court decline to grant final approval of the settlement, or if payment fails to be made, the release is null and void.

**Medicare Conditional Payments**

**If you believe you have received Medicare Conditional Payments for any medical care you received in connection with being displaced from your job due to a turnaround in 2012, 2013, and/or 2014 and therefore cannot sign this form as written, please contact Class Counsel immediately for more information about how to receive an Individual Monetary Award. You may contact Class Counsel as follows:**

**By electronic mail: pcowlin@fishlawfirm.com**

**By telephone: (312) 205-1702**

Pursuant to 42 U.S.C. § 1395(y), *et seq*., 42 C.F.R. § 411.20-411.47, the Medicare Intermediary Manual, Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), and certain memoranda or FAQs issued by the Centers for Medicare and Medicaid

Services ("CMS"), I acknowledge my duty and the Class Settlement Trust Fund's duty to adequately consider Medicare's interests in this Agreement. I agree as follows:

A.   I represent that I have not received Medicare benefits for medical services or items related to, arising from, or in connection with being displaced from my job due to a turnaround in 2012, 2013, and/or 2014.

B.   I represent and warrant that no Medicare payments have been made to me or on my behalf and that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to being displaced from my job due to a turnaround in 2012, 2013, and/or 2014. I further agree that I, and not any of the Released Parties or the Class Settlement Trust Fund, shall be responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted by the government.

C.   To the extent my representations and warranties related to my Medicare status and receipt of medical services are inaccurate, not current, or misleading, I agree to indemnify and hold harmless the Released Parties and the Class Settlement Trust Fund from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, or any other person or entity, arising from or related to the payment of the Individual Settlement Award, any conditional payments made by Medicare, or any medical expenses or payments arising from or related to any matter that is subject to the Settlement Agreement or this release.


_____          _____
Signature                                                          Date

**EXHIBIT A-2**

**RELEASE OF CLAIMS**

I,_____, for and in consideration of the Individual Monetary Award and the Named Plaintiff Enhancement Payment that is payable to me pursuant to the terms of the Settlement Agreement preliminarily approved by the Court in *Chicago Teachers Union, Local 1, et al. v. Board of Education of the City of Chicago*, Case No. 12-cv-10311 (N.D. Ill.), and *Chicago Teachers Union, Local 1, et al. v. Board of Education of the City of Chicago*, Case No. 15-cv-8149 (N.D. Ill.) (the "Lawsuits"), and the dismissal of the Lawsuits, on behalf of myself, my heirs, assigns, executors, and agents, do hereby forever release, waive, remise, acquit, and discharge the Chicago Board of Education and all of its past, present, and future members, officers, employees, insurers, reinsurers representatives and agents (collectively, the "Released Parties"), from any and all claims and causes of action of any kind, known or unknown, which I now have or ever have had under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and any other similar or related federal, state, or local employment discrimination or civil rights law, regulation, or ordinance arising from or related to the underlying facts and claims that were asserted in these cases. This release does not release any other claims, grievances or lawsuits.

I acknowledge that I am represented by Class Counsel and also have had the opportunity to consult with Class Counsel and my personal attorneys concerning this release and the Settlement Agreement, and I have either consulted with my attorneys or I have chosen not to exercise my right to do so.

I understand that the Released Parties are not admitting any violation of my rights under statutory or common law. I also understand that this release is effective only so long as the Court grants final approval of the settlement and the settlement award approved by the Court is tendered to me. Should the Court decline to grant final approval of the settlement, or if payment fails to be made, the release is null and void.

**Medicare Conditional Payments**

**If you believe you have received Medicare Conditional Payments for any medical care you received in connection with being displaced from your job due to a turnaround in 2012, 2013, and/or 2014 and therefore cannot sign this form as written, please contact Class Counsel immediately for more information about how to receive an Individual Monetary Award. You may contact Class Counsel as follows:**

**By electronic mail:** **pcowlin@fishlawfirm.com**

**By telephone: (312) 205-1702**

Pursuant to 42 U.S.C. § 1395(y), *et seq.*, 42 C.F.R. § 411.20-411.47, the Medicare Intermediary Manual, Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), and certain memoranda or FAQs issued by the Centers for Medicare and Medicaid

Services ("CMS"), I acknowledge my duty and the Class Settlement Trust Fund's duty to adequately consider Medicare's interests in this Agreement. I agree as follows:

A.   I represent that I have not received Medicare benefits for medical services or items related to, arising from, or in connection with being displaced from my job due to a turnaround in 2012, 2013, and/or 2014.

B.   I represent and warrant that no Medicare payments have been made to me or on my behalf and that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to being displaced from my job due to a turnaround in 2012, 2013, and/or 2014. I further agree that I, and not any of the Released Parties or the Class Settlement Trust Fund, shall be responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted by the government.

C.   To the extent my representations and warranties related to my Medicare status and receipt of medical services are inaccurate, not current, or misleading, I agree to indemnify and hold harmless the Released Parties and the Class Settlement Trust Fund from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, or any other person or entity, arising from or related to the payment of the Individual Monetary Award and Named Plaintiff Enhancement Payment, any conditional payments made by Medicare, or any medical expenses or payments arising from or related to any matter that is subject to the Settlement Agreement or this release.


_____               _____
Signature                                      Date

**<u>EXHIBIT E</u>**

**REQUEST FOR OPT-OUT STATEMENT**

If you do not wish to participate in the Settlement Class as described in the Notice of Class Certification and Class Action Settlement, then you must sign and send this form to:

Chicago Teachers Union v. Chicago Board of Education
P.O. Box 2006
Chanhassen, MN 55317-9800

The Settlement Administrator must receive your Request for Opt-Out Statement no later than _____. If the Settlement Administrator receives your Request for Opt-Out Statement after _____ your Request for Opt-Out Statement will not be considered and you will be bound by the terms of the Settlement Agreement. Note that you bear any risk of non-receipt or delayed delivery of your Request for Opt-Out Statement by _____ so you should ensure there is adequate time for delivery before this deadline.

If you decide to exclude yourself from the Settlement Class, then:

- you will not be eligible to participate in the settlement;

- you will not receive an Individual Monetary Award;

- you will not be permitted to object to this Settlement Agreement or otherwise participate in any further proceedings in the Litigation;

- the law firm of Fish Potter Bolaños, P.C., formerly known as Potter Bolanos LLC, and the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School, will no longer represent you or be your attorneys;

- you may pursue any of your own individual claims and relief, including monetary damages, against the Board of Education of the City of Chicago (the "Board"); however, your claims will be subject to all of the Board's defenses, including but not limited to statute of limitations defenses, failure to exhaust administrative remedies defenses, that it had a legitimate business reasons for the turnarounds and/or that the Board had no equally effective and less discriminatory alternatives to turnarounds. In fact, you may not be able to proceed with you individual claim at all, and you may obtain no relief whatsoever. In addition, you will have to hire your own attorney(s) to represent you.

If you decide not to exclude yourself from the Settlement Class, then you will be bound by the Settlement Agreement and release contained therein, even if you do not submit a claim.

**REQUEST FOR OPT-OUT**

*Chicago Teachers Union, Local 1, et al. v. Board of Education of the City of Chicago*, Case Nos. 12-cv-10311 and 15-cv-8149 (N.D. Ill.)

      I wish to opt-out of the Settlement Class in the Litigation. I understand that by requesting to be excluded from the Settlement Class, I will not be eligible to participate in the settlement in accordance with the Settlement Agreement and I will not receive an Individual Monetary Award. I understand that if I am excluded from the Settlement Class, I may bring a separate action, but that any action that I bring will be subject to all defenses that the Board may assert, as explained in the attached Request for Opt-Out Statement. I understand that in any separate lawsuit, I may receive nothing or less than I would have received if I had filed a Claim Form under the Distribution Formula outlined in the Settlement Agreement.

      By signing below, I acknowledge that I have read and understood all of the above language. I am signing this form voluntarily and knowingly.

.

_____
Signature

_____
Print Name

_____
Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date

## EXHIBIT B

## CLAIM FORM

**This Claim Form must be received by _____ in order to be considered.**

**These Claims are based on "turnarounds" in calendar years 2012, 2013, or 2014. If you lost your job due to one or more turnarounds, please note it below. Turnarounds in other years are not eligible for a monetary award under the Settlement in *Chicago Teachers Union, et al. v. Chicago Board of Education,* Case Nos. 12-cv-10311 and 15-cv-8149 (N.D. Ill.).**

**Please write clearly.**

## SECTION A

## REQUIRED BACKGROUND INFORMATION

*You **must** complete the following information in order for your Claim Form to be processed.*

1. _____
   Full Name – First Name, Middle Initial, Last Name

2. _____
   Street Address, including any apartment or box number

3. _____
   City, State, Zip Code

4. (_____)_____   5. (_____)_____
   Home Telephone                      Work/Day-time Telephone

6. (_____)_____   7. _____
   Cellular Telephone, if any          E-Mail Address

8. _____   9. _____
   Social Security Number              Date of Birth
                                       (Month/Day/Year)

10. Please list any previous names you have used, including any you may have used while employed by the Chicago Board of Education:

    _____

11. Are you African-American or Black?     Yes _____          No_____

12.     Were you a teacher or a para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," in calendar year 2012, 2013, or 2014?

Yes_____            No_____

If "Yes," please indicate which calendar year(s) you were displaced because of a turnaround:

_____ 2012            _____ 2013            _____ 2014

## SECTION B

## EMPLOYMENT HISTORY

13.     Prior to being displaced because of a turnaround in the year or years _____, I was employed by the Board as a:

_____

(Position, e.g., Tenured Teacher, Probationary Teacher, Para-Professional)

14.     I was employed at the following school(s) or attendance center(s) in the years noted:

_____

16.     After I was displaced because of the turnaround:
(Please complete for each turnaround that you were subjected to and check each response that is applicable)

_____ I was assigned to the Reassigned Teachers Pool beginning on _____ until_____ .
                        (Dates)

_____ I was assigned to the Cadre Pool beginning on _____ until _____.
                                                            (Dates)

_____ I was assigned to work as a day-to-day substitute teacher beginning on _____ until _____.
                        (Dates)

2

_____ I found a position with the Board on _____ _____
                                                        (Date)

      as a _____
                (Position; Note if full-time, permanent, temporary, part-time, etc.)

      at _____
                (School or Attendance Center)

_____ I was unable to find another position with the Board

_____ I found a position with a different employer on _____
                                                                    (Date)

_____ I retired on _____
                            (Date)


## **SECTION C**

## **NON-MONETARY IMPACT OF THE TURNAROUND ON YOU**

17.    Please describe the impact that being displaced by a turnaround had on you. You may include how being displaced because of the turnaround made you feel, including any hardship, stress or other emotions, pain, suffering, and/or anguish you experienced because of the turnaround.

_____

_____

_____

_____

_____

_____

3

## SECTION D

## CERTIFICATION

**I AFFIRM UNDER PENALTY OF PERJURY THAT THE FACTS I HAVE STATED IN THIS CLAIM FORM ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE.**

**I also consent and agree to allow Class Counsel full and complete access to any and all confidential personal information supplied on my Claim Form in connection with its investigation of the accuracy of the facts represented in this Claim Form. I understand that the information that I provide may be verified through my personnel records or other sources.**

**I understand that I must keep _____ (address below) informed of my current address and of any change in my home address. If I do not do so, I understand that I may not receive any award that I might otherwise be entitled to receive.**

Dated: _____, 2022        _____
                                           Signature of Claimant

                                           _____
                                           Printed Name of Claimant

**WHEN YOU HAVE COMPLETED THIS CLAIM FORM AND SIGNED THE CERTIFICATION, PUT IT IN THE PROVIDED POSTAGE PREPAID ENVELOPE WITH THE EXECUTED RELEASE, COMPLETED IRS FORM W-9, AND MAIL IT SO THAT IT IS RECEIVED BY THE SETTLEMENT ADMINISTRATOR NO LATER THAN _____. THE ADDRESS OF THE SETTLEMENT ADMINSTRATOR IS:**

**[ANALYTICS CONSULTING LLC]**

## <u>EXHIBIT C</u>

***THIS IS A NOTICE OF A PROPOSED CLASS ACTION SETTLEMENT***
***PLEASE READ CAREFULLY***
***THIS IS NOT A SUMMONS OR AN ORDER TO COME TO COURT***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO TEACHERS UNION, LOCAL 1, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case Nos. 12-cv-10311, 15-cv-8149 |
| | ) | |
| v. | ) | Judge Sara L. Ellis |
| | ) | Magistrate Judge Young Kim |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, a body politic and corporate, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF SETTLEMENT OF
## DISCRIMINATION CLASS ACTION LAWSUIT TO CERTIFIED CLASS

This Notice is being sent to you, as ordered by the Court, to advise you of the preliminary approval of the settlement of two employment discrimination cases against the Board of Education of the City of Chicago (the "Board").

In these cases, *Chicago Teachers Union, et al. v. Board of Education of the City of Chicago*, Nos. 12-cv-10311 and 15-cv-8149, Plaintiffs, the Chicago Teachers Union, Local 1, American Federation of Teachers, AFL-CIO ("CTU"); Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr., individually and on behalf of a class of certain African-American and Black teachers and paraprofessionals ("PSRPs"), employed by the Board, Plaintiffs alleged, among other things, that the Board violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, by unlawfully discriminating against a class of African-American teachers and PSRPs who were displaced from their positions because the school or attendance center at which they were employed was subjected to reconstitution ("turnaround") in the 2012, 2013, and 2014 calendar years. The Board has denied the allegations in the cases, denied that any law was violated, and denied that it is liable to any of the plaintiffs or any class members.

1

**IF YOU ARE A CERTIFIED CLASS MEMBER, YOU MUST NOW DECIDE WHAT ACTION YOU WILL TAKE IN RESPONSE TO THE PROPOSED SETTLEMENT OF THE CLASS ACTION.**

**Your legal rights are affected whether you act or do not act. Read this notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM AND RELEASE** | The only way to receive a payment. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Receive no payment and be bound by the terms of the settlement. |

These rights and options—**and the deadlines to exercise them**—are explained in this notice. The Court still has to decide whether to approve the settlement. If the settlement is approved, payments will be made after Claim Forms are reviewed and the Court approves the proposed payments.

## <u>EXPLANATION OF THIS NOTICE</u>

**BASIC INFORMATION**................................................................................**4**
    1.   Why Have I Received This Notice? ........................................... 4
    2.   What Is This Lawsuit About? .................................................... 4
    3.   Why Is This Lawsuit A Class Action? ...................................... 5
    4.   Why Is There A Settlement? ..................................................... 6
    5.   Who Is In The Settlement? ....................................................... 6
    6.   What Does the Settlement Provide? .......................................... 6
    7.   What Can I Get From the Settlement? ....................................... 6

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM**...........**7**
    8.   How Can I Get A Payment? ...................................................... 7
    9.   When Would I Get My Payment? .............................................. 7

**THE LAWYERS REPRESENTING YOU** ...................................................**7**
    10.   Do I Have A Lawyer In This Case? ........................................ 7
    11.   How Will The Lawyers Be Paid? ........................................... 8

**OBJECTING TO THE SETTLEMENT** ....................................................**8**
    12.   How Do I Tell The Court That I Do Not Like The Settlement? ................. 8

**RESOLUTION OF CLAIMS** ....................................................................**9**
    13.   What Claims Have Been Resolved? ........................................ 9

**THE COURT'S FAIRNESS HEARING** ....................................................**9**
    14.   When And Where Will The Court Decide Whether To Approve The Settlement? ..... 9
    15.   Do I Have To Come To The Hearing? ..................................... 10
    16.   May I Speak At The Hearing? ............................................... 10

**IF YOU DO NOTHING** .........................................................................**10**
    17.   What Happens If I Do Nothing At All?................................... 10

**GETTING MORE INFORMATION**.......................................................**11**
    18.   How Do I Get More Information? .......................................... 11

## BASIC INFORMATION

### 1.     Why Have I Received This Notice?

You have received this Notice because you are part of a class that was previously certified by the Court, as the Board's personnel records show that you are African-American or Black and you were employed at a school or attendance center at the time that it was subjected to a turnaround in calendar year 2012. This notice explains that you have legal rights and options that you may exercise now that a settlement has been proposed in this case.

### 2.     What Are These Lawsuits About?

These lawsuits are about whether the Board discriminated against African-American or Black teachers and PSRPs based on their race by turning around schools and attendance centers in 2012, 2013 and 2014.

The Plaintiffs filed their first lawsuit (No. 12-cv-10311) on December 26, 2012, on behalf of themselves and all other African-American teachers and PSRPs who were displaced because of a turnaround in calendar year 2012. On December 9, 2015, the Court certified Plaintiffs' suit as a class action. The CTU filed the second lawsuit (No. 15-cv-8149) on September 16, 2015, claiming that the turnarounds in calendar years 2013 and 2014 were also racially discriminatory. As part of this settlement, the parties have agreed to request that the Court certify a Settlement Class consisting of African-American teachers and PSRPs who were displaced because of a turnaround in calendar years 2013 and/or 2014, in addition to the previously certified class, consisting of African-American teachers and PSRPs who were displaced because of a turnaround in calendar year 2012.

Plaintiffs claim that the Board engaged in a pattern or practice of intentional race discrimination in violation of Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, and Section 1983 of the Civil Rights Act of 1871, by selecting schools and attendance centers with high percentages of African-American teachers and PSRPs. Plaintiffs also claim that the Board engaged in unintentional discrimination because the method it used to select schools and attendance centers for turnaround, although facially neutral, had a disparate impact on African-American teachers and PSRPs.

The Board denies that it has violated any law or discriminated against African American teachers and/or paraprofessionals, or engaged in any pattern or practice of discrimination against African-American teachers and/or paraprofessionals in the 2012, 2013 and 2014 turnarounds. The Board also denies that the 2012, 2013 and 2014 turnarounds had a disparate impact on African American teachers and/or paraprofessionals employed in the 2012, 2013 and 2014 turnaround schools. The Board also denies that turnaround decisions are based on the composition of a school's staff, as opposed to the school's academic standing. The Board also asserts that it had a legitimate business reason for the turnarounds and had no equally effective, less discriminatory alternatives to the turnarounds.

The Court has not decided whether the CTU and the Plaintiffs or the Board are correct – it has not decided the case on the merits. On March 17, 2021, the Court denied the Motions for Summary

Judgment filed by Plaintiffs and the Board. As a result, the cases were anticipated to proceed to trial until the parties reached a preliminary settlement.

By directing this Notice to be sent to you, the Court is not suggesting that the CTU or the Board will win or lose this case. The CTU and the plaintiffs must prove their claims. There is no guarantee that the CTU will or will not win, or obtain money damages and other relief for the Class Members.

## 3.     Why Is This Lawsuit A Class Action?

In a class action lawsuit, one or more people called "Named Plaintiffs" sue on behalf of other people who have similar claims. In this case, the Named Plaintiffs are Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr.

On, December 9, 2015, the Court decided that the lawsuit met the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court allowed this lawsuit to be treated as a class action because:

- there are a sufficient number of African-American teachers and PSRPs who were displaced because of the turnarounds in calendar year 2012 to form a class;

- there are legal questions and facts that are common to each Certified Class Member;

- the Named Plaintiffs' claims are typical of the claims of the rest of the Certified Class;

- the Named Plaintiffs and the lawyers representing the Certified Class will fairly and adequately represent the Certified Class Members' interests;

- the common legal questions and facts in this case are more important than questions that affect only individuals; and

- this class action will be more efficient than having many individual lawsuits.

The Court certified an initial class based on turnarounds that the Board approved in 2012 defined as all African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," during the 2012 calendar year ("Certified Class"). The Certified Class received notice regarding certification, and the opportunity to opt out of the Certified Class and the litigation, on or about May 23, 2016.  You are part of the Certified Class because you did not opt out of the Certified Class at that time.

As part of preliminary approval of this Settlement Agreement, the Court has also certified a Settlement Class (for settlement purposes only) defined as all African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," in the 2013 and/or 2014 calendar years ("Settlement Class").

**4.     Why Is There A Settlement?**

The Court did not decide in favor of Plaintiffs or the Board. Plaintiffs and the Board negotiated to reach a proposed settlement rather than go to trial on these cases. By agreeing to a settlement, the parties avoid the cost of a trial and the risks of an adverse decision involved in a trial; and the Class Members affected will receive compensation. Class Counsel believe the settlement is in the best interest of all of the members of the class.

**5.     Who Is In The Settlement?**

The Named Plaintiffs and individuals who are in the classes certified by the Court are covered by the settlement of this case. As stated in the answer to Question 3 above, the classes include all African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," during the 2012, 2013, and/or 2014 calendar years.

## THE SETTLEMENT BENEFITS

**6.     What Does The Settlement Provide?**

The settlement provides that the Board will pay or cause to be paid the aggregate sum of Nine Million, Two Hundred and Fifty Thousand Dollars ($9,250,000) to settle this case,  plus the costs to administer the settlement. The $9,250,000 shall be distributed to the Named Plaintiffs, Class Members, and Class Counsel. Class Counsel will apply for a payment of Seventy-Five Thousand Dollars ($75,000) to be distributed to the three Named Plaintiffs, so that each receives Twenty-Five Thousand Dollars ($25,000) as an incentive payment for the time and effort given to assist the litigation. Five Million, One Hundred and Seventy-Five Thousand Dollars ($5,175,000) will be distributed to the members of the Certified Class and the Settlement Class according to a point system developed by Class Counsel and approved by the Court, as discussed below in answer to Question 7. Class Counsel will apply for a payment of up to Four Million Dollars ($4,000,000) in payment to them of their reasonable attorneys' fees and costs and expenses in pursuing this litigation on behalf of the Named Plaintiffs and the class.

**7.     What Can I Get From The Settlement?**

You may be eligible to get a payment from the settlement for the harm you believe you suffered as a result of the Board's allegedly discriminatory turnaround practices. Class Counsel shall determine the amount of each monetary award based on a point system developed by Class Counsel and presented to the Court for approval. This point system will take into account several factors, including, but not limited to what happened to you after you were displaced by a turnaround, how being displaced by a turnaround affected you, whether you were able to find a new position in a school or attendance center after you were displaced, how long it took you to find the new position with the Board, whether you found a new position with an employer other than the Board, and how long it took you to find the alternative employment. The amount of each Individual Monetary Award will be determined after receipt of claims forms from all members of the Certified Class and the Settlement Class and will depend in part on how many valid Claim Forms are received. The point system (referred to as the "Distribution Formula" in the Settlement Agreement) and Individual Monetary Awards will be filed under seal to protect your privacy. After

submission and evaluation of your Claim Form, Class Counsel will allocate your proportionate share of the settlement based on how many points you receive as a percentage of the total available points. The Court will review the amounts of the Individual Monetary Awards to ensure they are fair before the payments are made. While the amount of each Individual Monetary Award cannot be known until all Claim Forms are received, it is expected that each class member who submits a timely Claim Form and release will receive a minimum payment of $5,000.00.

## HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

**8.      How Can I Get A Payment?**

**This will be your only notice for purposes of the proposed settlement and you WILL NOT receive another notice.**

**If you want to participate in the settlement and not object, your completed Claim Form and the signed release must be received by the Settlement Administrator on or before _____, 2022.  If you do not do so, your claim will not be timely and will not be accepted.**

**If you choose to object, you must do so by _____, 2022 for your objection to be considered at the Fairness Hearing.**

**To receive a payment from the settlement fund, the enclosed Claim Form and an executed release (also enclosed) <u>must be completed and received</u> by the Settlement Administrator Analytics Consulting LLC on or before _____, 2022, to be considered timely. You should mail the form to the Settlement Administrator at the following address:**

Chicago Teachers Union v. Chicago Board of Education<br>
P.O. Box 2006<br>
Chanhassen, MN 55317-9800

**It is your obligation to make sure Analytics Consulting LLC receives your completed Claim Form and the release before the due date.** All Claim Forms must be signed under penalty of perjury to be considered.

**9.      When Would I Get My Payment?**

If you are determined to be eligible to receive an Individual Monetary Award, you will receive a check after the Court reviews all of the proposed payments to Class Members. This process may take some time. The parties expect that payments will occur sometime during late 2022.

## THE LAWYERS REPRESENTING YOU

**10.      Do I Have A Lawyer In This Case?**

When the Court certified this case as a class action, the Court decided that Robin Potter and Patrick Cowlin of Fish Potter Bolaños, P.C., formerly known as Potter Bolaños LLC, and Randall D. Schmidt of the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School ("Class Counsel") are qualified to represent you and all Class Members.

**11.    How Will The Lawyers Be Paid?**

The settlement provides that Class Counsel will receive up to Four Million Dollars ($4,000,000) of the Gross Settlement Payment in payment to them of their reasonable attorneys' fees and costs in pursuing this litigation on behalf of the Named Plaintiffs and the class. The Court will be asked to approve the attorneys' fees and costs at the Fairness Hearing described on page _ in the answer to Question 14.

# OBJECTING TO THE SETTLEMENT

**12.    How Do I Tell The Court That I Do Not Like The Settlement?**

You can tell the Court that you do not agree with the settlement or some part of it by "objecting" to the settlement. You or your attorney must give reasons in writing why you think the Court should not approve the settlement or why you do not like the settlement or some part of it. You must state whether your objection applies only to you, to a specific subset of the class, or to the entire settlement.  The Court will consider your views. To object, you must send a letter stating that you object to the settlement in *CTU v. Chicago Board of Education,* Case Nos. 12-cv-10311 and 15-cv-8149. The letter must include your name, address, telephone number, signature, and the reasons you object to the settlement. Mail identical copies of the objection to all three of the following addresses:

<u>**CLERK OF THE COURT:**</u>
United States District Court
for the Northern District of Illinois
219 S. Dearborn Street
20th Floor
Chicago, IL 60604

<u>**CLASS COUNSEL:**</u>
Patrick Cowlin
Fish Potter Bolaños, P.C.
111 East Wacker Drive, Suite 2300
Chicago, IL 60601
(312) 205-1702

<u>**DEFENDANT'S COUNSEL:**</u>
John F. Kennedy
Taft Stettinius & Hollister
111 E. Wacker Dr. Suite 2800
Chicago, IL 60601

Your objection <u>must be received</u> at the three addresses above on or _____, 2022 or it will not be considered.  **This will be your only notice for purposes of the proposed settlement and you WILL NOT receive another notice. If you choose to object, you must do so by _____, 2022 for your objection to be considered at the Fairness**

Hearing.

## RESOLUTION OF CLAIMS

**13.     What Claims Have Been Resolved?**

Because you did not opt out of the Litigation, this settlement represents the resolution of your claims including all causes of action that you asserted or could have asserted based upon the race discrimination claims in the Litigation. Specifically resolved by this settlement are any and all race discrimination claims under Title VII, Section 1981 and Section 1983, arising from the turnarounds in calendar years 2012, 2013, and 2014. Because these claims have been resolved, you may not seek any further resolution or remedy related to these claims, whether you seek monetary damages, injunctive, declaratory or equitable relief, or costs and attorneys' fees, whether arising under Title VII, Section 1981, Section 1983, or under any other federal, state, local or common laws, or regulations relating to the same facts that form the basis of the claims of intentional and unintentional discrimination in these cases.

## THE COURT'S FAIRNESS HEARING

**14.     When And Where Will The Court Decide Whether To Approve The Settlement?**

The Court will hold a hearing at which it will consider the fairness, adequacy, and reasonableness of the proposed settlement (the "Fairness Hearing"). The Court will consider whether:

(A) the Named Plaintiffs and Class Counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

      (i) the costs, risks, and delay of trial and appeal;

      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the amount and terms of any proposed award of attorneys' fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The Fairness Hearing will be held on _____, 2022, at ____ .m. in Room _____, 219 S. Dearborn Street, Chicago, Illinois 60604. If there are objections, the Court will consider them. The Court will listen to Class Members who have asked to speak at the hearing (see question 16 below). After the hearing, the Court will decide whether to approve the settlement. The Court will also rule upon the Class Counsel's request for attorneys' fees and costs. We do not know how long after the Fairness Hearing the Court will issue its decision.

**15.     Do I Have To Come To The Hearing?**

You are welcome to attend the Fairness Hearing, but you are not required to attend. If you send a written objection, you are not required to raise your objection in person. As long as your written objection was received on time, the Court will consider it. You may also obtain an attorney at your own expense to represent you personally at the Fairness Hearing, but it is not necessary. Class Counsel will answer any questions that the Court may have.

**16.     May I Speak At The Hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter of "Notice of Intention to Appear in *CTU v. Chicago Board of Education*" stating that you will attend the Fairness Hearing and requesting the Court to allow you to speak. You must include your name, address, telephone number, and signature in the letter. Your Notice of Intention to Appear must be received no later than _____, 2022 at all three of the following addresses:

**CLERK OF THE COURT:**
United States District Court
for the Northern District of Illinois
219 S. Dearborn Street
20th Floor
Chicago, IL 60604

**CLASS COUNSEL:**
Patrick Cowlin
Fish Potter Bolaños, P.C.
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
(312) 205-1702

**DEFENDANT'S COUNSEL:**
John F. Kennedy
Taft Stettinius & Hollister
111 E. Wacker Dr. Suite 2800
Chicago, IL 60601

# IF YOU DO NOTHING

**17.     What Happens If I Do Nothing At All?**

If you do not submit a Claim Form and Release, you will not receive an Individual Monetary Award and will still be bound by the terms of this settlement, including the release of claims set forth in the Settlement Agreement. As a result, you will not be able to start a new lawsuit, continue with this lawsuit, or be part of any other lawsuit against the Board about the legal issues in these cases at any time in the future.

**Please be advised that this will be your only notice for purposes of the proposed settlement and you WILL NOT receive another notice.**

## GETTING MORE INFORMATION

**18.    How Do I Get More Information?**

This Notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Class Counsel at either of the following addresses:

| | |
|---|---|
| Patrick Cowlin | Randall D. Schmidt |
| Fish Potter Bolaños, P.C. | Edwin F. Mandel Legal Aid Clinic |
| 111 East Wacker Drive, Suite 2300 | 6020 S. University Ave. |
| Chicago, IL 60601 | Chicago, IL 60637 |
| (312) 205-1702 | (773) 702-9611 |
| www.fishlawfirm.com | |

For more information, you may also visit _____, where you will find the Settlement Agreement, the Court's Order certifying the Certified Class, the Preliminary Approval Order, the Court's Order certifying the Settlement Class, and the Notices to Class Members. You may also call or write to Class Counsel with any questions regarding this class action.

**PLEASE DO NOT TELEPHONE THE CLERK OF THE COURT,
THE JUDGE IN THIS CASE, OR THE JUDGE'S CHAMBERS OR STAFF!**

Dated: _____, 2022

CLERK, U.S. District Court
Northern District of Illinois

<u>**EXHIBIT D**</u>

***THIS IS A NOTICE OF A PROPOSED CLASS ACTION SETTLEMENT***
***PLEASE READ CAREFULLY***
***THIS IS NOT A SUMMONS OR AN ORDER TO COME TO COURT***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO TEACHERS UNION, LOCAL 1, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case Nos. 12-cv-10311, 15-cv-8149 |
| v. | ) ) | Judge Sara L. Ellis |
| | ) | Magistrate Judge Young Kim |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, a body politic and corporate, | ) ) ) | |
| Defendant. | ) ) | |

**NOTICE OF CLASS CERTIFICATION AND SETTLEMENT OF**
**A DISCRIMINATION CLASS ACTION LAWSUIT TO SETTLEMENT**
**CLASS**

This Notice is being sent to you, as ordered by the Court, to advise you of the certification of a class and the preliminary approval of the settlement of two employment discrimination cases against the Board of Education of the City of Chicago (the "Board").

In these cases, *Chicago Teachers Union, et al. v. Board of Education of the City of Chicago,* Nos. 12-cv-10311 and 15-cv-8149, Plaintiffs, the Chicago Teachers Union, Local 1, American Federation of Teachers, AFL-CIO ("CTU"); Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr., individually and on behalf of a class of certain African-American and Black teachers and paraprofessionals ("PSRPs"), employed by the Board, Plaintiffs alleged, among other things, that the Board violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, by unlawfully discriminating against a class of African-American teachers and PSRPs who were displaced from their positions because the school or attendance center at which they were employed was subjected to reconstitution ("turnaround") in the 2012, 2013, and 2014 calendar years. The Board has denied the allegations in the cases, denied that any law was violated, and denied that it is liable to any of the plaintiffs or any class members.

1

**IF YOU ARE A SETTLEMENT CLASS MEMBER, YOU MUST NOW DECIDE WHAT ACTION YOU WILL TAKE IN RESPONSE TO THE PROPOSED SETTLEMENT OF THE CLASS ACTION.**

**Your legal rights are affected whether you act or do not act. Read this notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM AND RELEASE** | The only way to receive a payment. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it. Keep any rights you have.** If you ask to be excluded, you will not get any money or benefits under the settlement. By being excluded, you keep any rights you have to sue the Board separately about the same legal claims in this lawsuit and the Board keeps its defenses to your claims. Your right to bring a claim also may be time barred, so you should consult with counsel before asking to be excluded. |
| **OBJECT** | Write to the Court about why you do not like the settlement. You cannot object if you ask to be excluded. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. You cannot speak in Court about the fairness of the settlement if you ask to be excluded. |
| **DO NOTHING** | Receive no payment and be bound by the terms of the settlement. |

- To ask to be excluded, you must act before _____.

- These rights and options—**and the deadlines to exercise them**—are explained in this notice. The Court still has to decide whether to approve the settlement. If the settlement is approved, payments will be made after Claim Forms are reviewed and the Court approves the proposed payments.

## EXPLANATION OF THIS NOTICE

**BASIC INFORMATION**..........................................................................................**4**
   1.   Why Have I Received This Notice?...................................................... 4
   2.   What Is This Lawsuit About?............................................................... 4
   3.   Why Is This Lawsuit A Class Action?................................................. 5
   4.   Why Is There A Settlement?................................................................ 5
   5.   Who Is In The Settlement?................................................................... 6
   6.   What Does The Settlement Provide?.................................................... 6
   7.   What Can I Get From The Settlement?................................................ 6

**THE LAWYERS REPRESENTING YOU** ...........................................................**6**
   8   Do I Have A Lawyer In This Case?...................................................... 6
   9.   How Will The Lawyers Be Paid?......................................................... 6

**YOUR RIGHTS AND OPTIONS** ........................................................................**7**

**A.**   **OPT-OUT OF THE CASE**.......................................................................**7**
   10.   What Are My Options If I Am A Class Member?................................ 7
   11.   What Happens If I Ask To Be Excluded?............................................ 7
   12.   Why Would I Ask To Be Excluded?.................................................... 7
   13   How Do I Ask The Court To Exclude Me From This Class Action? ......................... 7

**B.**   **HOW YOU GET A PAYMENT - STAY IN THE CASE AND SUBMIT A CLAIM FORM**...............................................................................**8**
   14.   How Can I Get A Payment?................................................................. 8
   15.   When Would I Get My Payment?........................................................ 8

**C.**   **OBJECT TO THE SETTLEMENT**.........................................................**8**
   16.   How Do I Tell The Court That I Do Not Like The Settlement? .................. 8

**D.**   **DO NOTHING**..........................................................................................**9**
   17.   What Happens If I Do Nothing At All? ............................................... 9

**RESOLUTION OF CLAIMS** ..............................................................................**9**
   18.   What Claims Have Been Resolved?..................................................... 9

**THE COURT'S FAIRNESS HEARING** .............................................................**9**
   19.   When And Where Will The Court Decide Whether To Approve The Settlement?......... 9
   20.   Do I Have To Come To The Hearing?............................................... 10
   21.   May I Speak At The Hearing?........................................................... 10

**GETTING MORE INFORMATION**.................................................................**10**
   22.   How Do I Get More Information?...................................................... 10

## BASIC INFORMATION

### 1. Why Have I Received This Notice?

You have received this Notice because the Board's personnel records show that you are African-American or Black and you were employed at one or more schools or attendance centers at the time that it was subjected to a turnaround in calendar years 2013 and/or 2014. This notice explains that you have legal rights and options that you may exercise now that a settlement has been proposed in this case. If you were at a turnaround school in calendar year 2012, you have received a separate notice, entitled Notice of Settlement of Discrimination Class Action Lawsuit to Certified Class.

### 2. What Are These Lawsuits About?

These lawsuits are about whether the Board discriminated against African-American or Black teachers and PSRPs based on their race by turning around schools and attendance centers in 2012, 2013 and 2014.

The Plaintiffs filed their first lawsuit (No. 12-cv-10311) on December 26, 2012, on behalf of themselves and all other African-American teachers and PSRPs who were displaced because of a turnaround in calendar year 2012. On December 9, 2015, the Court certified Plaintiffs' suit as a class action. The CTU filed the second lawsuit (No. 15-cv-8149) on September 16, 2015, claiming that the turnarounds in calendar years 2013 and 2014 were also racially discriminatory. As part of this settlement, the parties have agreed to request that the Court certify a Settlement Class consisting of African-American teachers and PSRPs who were displaced because of a turnaround in calendar years 2013 and/or 2014, in addition to the previously certified class, consisting of African-American teachers and PSRPs who were displaced because of a turnaround in calendar year 2012. You are receiving this Notice because the parties believe you are a member of the Settlement Class.

Plaintiffs claim that the Board engaged in a pattern or practice of intentional race discrimination in violation of Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, and Section 1983 of the Civil Rights Act of 1871, by selecting schools and attendance centers with high percentages of African-American teachers and PSRPs. Plaintiffs also claim that the Board engaged in unintentional discrimination because the method it used to select schools and attendance centers for turnaround, although facially neutral, had a disparate impact on African-American teachers and PSRPs.

The Board denies that it has violated any law or discriminated against African American teachers and/or paraprofessionals, or engaged in any pattern or practice of discrimination against African-American teachers and/or paraprofessionals in the 2012, 2013 and 2014 turnarounds. The Board also denies that the 2012, 2013 and 2014 turnarounds had a disparate impact on African American teachers and/or paraprofessionals employed in the 2012, 2013 and 2014 turnaround schools. The Board also denies that turnaround decisions are based on the composition of a school's staff, as opposed to the school's academic standing. The Board also asserts that it had a legitimate business reason for the turnarounds and had no equally effective, less discriminatory alternatives to the turnarounds.

4

The Court has not decided whether the CTU and the Plaintiffs or the Board are correct – it has not decided the case on the merits. On March 17, 2021, the Court denied the Motions for Summary Judgment filed by Plaintiffs and the Board. As a result, the cases were anticipated to proceed to trial until the parties reached a preliminary settlement.

By establishing the Settlement Class and directing this Notice to be sent to you, the Court is not suggesting that the CTU or the Board will win or lose this case. The CTU and the plaintiffs must prove their claims. There is no guarantee that the CTU will or will not win, or obtain money damages and other relief for the Class Members.

### 3.      Why Is This Lawsuit A Class Action?

In a class action lawsuit, one or more people called "Named Plaintiffs" sue on behalf of other people who have similar claims. In this case, the Named Plaintiffs are Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr.

As part of the preliminary approval of this settlement, the Court decided that the lawsuit meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court allowed this lawsuit and the Settlement Class to be treated as a class action because:

- there are a sufficient number of African-American teachers and PSRPs who were displaced because of the turnarounds in calendar years 2013, and 2014, to form a Settlement Class;

- there are legal questions and facts that are common to each Settlement Class Member;

- the Named Plaintiffs' claims are typical of the claims of the rest of the Settlement Class;

- the Named Plaintiffs and the lawyers representing the Settlement Class will fairly and adequately represent the Class Members' interests;

- the common legal questions and facts in this case are more important than questions that affect only individuals; and

- this class action will be more efficient than having many individual lawsuits.

The Court certified an initial class based on turnarounds that the Board approved in 2012, defined as all African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," during the 2012 calendar year ("Certified Class"). The Certified Class received notice regarding certification, and the opportunity to opt out from the Certified Class and the litigation, on or about May 23, 2016.

As part of this settlement, the Court has certified a Settlement Class (for settlement purposes only) defined as all African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the

Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," in the 2013 and/or 2014 calendar years ("Settlement Class").

**4. Why Is There A Settlement?**

The Court did not decide in favor of Plaintiffs or the Board. Plaintiffs and the Board negotiated to reach a proposed settlement rather than go to trial on these cases. By agreeing to a settlement, the parties avoid the cost of a trial and the risks of an adverse decision involved in a trial; and the Class Members affected will receive compensation. Class Counsel believe the settlement is in the best interest of all of the members of the class.

**5. Who Is In The Settlement?**

The Named Plaintiffs and individuals who are in the classes certified by the Court are covered by the settlement of this case. As stated in the answer to Question 3 above, the classes include all African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," during the 2012, 2013, and/or 2014 calendar years.

## THE SETTLEMENT BENEFITS

**6. What Does The Settlement Provide?**

The settlement provides that the Board will pay or cause to be paid the aggregate sum of Nine Million, Two Hundred and Fifty Thousand Dollars ($9,250,000) to settle this case, plus all costs to administer the settlement. The $9,250,000 shall be distributed to the Named Plaintiffs, Class Members, and Class Counsel. Class Counsel will apply for a payment of Seventy-Five Thousand Dollars ($75,000) to be distributed to the three Named Plaintiffs, so that each receives Twenty-Five Thousand Dollars ($25,000) as an incentive payment for the time and effort given to assist the litigation. Five Million, One Hundred and Seventy-Five Thousand Dollars ($5,175,000) will be distributed to the members of the Certified Class and the Settlement Class according to a point system developed by Class Counsel and approved by the Court, as discussed below in answer to Question 7. Class Counsel will apply for a payment of up to Four Million Dollars ($4,000,000) in payment to them of their reasonable attorneys' fees and costs and expenses in pursuing this litigation on behalf of the Named Plaintiffs and the Class.

**7. What Can I Get From The Settlement?**

You may be eligible to get a payment from the settlement for the harm you believe you suffered as a result of the Board's allegedly discriminatory turnaround practices. Class Counsel shall determine the amount of each monetary award based on a point system developed by Class Counsel and presented to the Court for approval. This point system will take into account several factors, including, but not limited to, what happened to you after you were displaced by a turnaround, how being displaced by a turnaround affected you, whether you were able to find a new position in a school or attendance center after you were displaced, how long it took you to find the new position with the Board, whether you found a new position with an employer other than the Board, and how long it took you to find the alternative employment. The amount of each Individual Monetary Award will be determined after receipt of claims forms from all members of the Certified Class and the Settlement Class and will depend in part on how many valid Claim

Forms are received. The point system (referred to as the "Distribution Formula" in the Settlement Agreement) and Individual Monetary Awards will be filed under seal to protect your privacy. After submission and evaluation of your Claim Form, Class Counsel will allocate your proportionate share of the settlement based on how many points you receive as a percentage of the total available points. The Court will review the amounts of the Individual Monetary Awards to ensure they are fair before the payments are made. While the amount of each Individual Monetary Award cannot be known until all Claim Forms are received, it is expected that each class member who submits a timely Claim Form and release will receive a minimum payment of $5,000.00.

## THE LAWYERS REPRESENTING YOU

### 8    Do I Have A Lawyer In This Case?

When the Court certified this case as a class action, the Court decided that Robin Potter and Patrick Cowlin of Fish Potter Bolaños, P.C., formerly known as Potter Bolaños LLC, and Randall D. Schmidt of the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School ("Class Counsel") are qualified to represent you and all Class Members.

### 9.    How Will The Lawyers Be Paid?

The settlement provides that Class Counsel will receive up to Four Million Dollars ($4,000,000) of the Gross Settlement Payment in payment to them of their reasonable attorneys' fees and costs in pursuing this litigation on behalf of the Named Plaintiffs and the class. The Court will be asked to approve the attorneys' fees and costs at the Fairness Hearing described on page 8 in the answer to Question 14.

## YOUR RIGHTS AND OPTIONS

### A. OPT-OUT OF THE CASE

You must decide whether to stay in the Settlement Class, or ask to be excluded from the Settlement Class, this lawsuit, and your right to recovery in the Settlement. You must notify Class Counsel by _____ if you wish to be excluded.

### 10.    What Are My Options If I Am A Settlement Class Member?

If you are a Settlement Class Member, you do not need to do anything to remain a part of the Settlement Class. If you are a Settlement Class Member, you will be bound by the judgment or settlement of class claims, whether it is favorable or unfavorable to you. You will need to complete and timely submit a Claim Form and Release in order to receive an Individual Monetary Award.

### 11.    What Happens If I Ask To Be Excluded?

If you exclude yourself from the Settlement Class, which also means to remove yourself or to "opt-out" of this lawsuit, you will not share in the settlement. However, you may be able to sue or continue to sue the Board for employment race discrimination independently.

You should consult with counsel before excluding yourself, if you are considering filing an independent lawsuit against the Board. If you start your own lawsuit against the Board after you

exclude yourself, you will have to hire your own lawyer for that lawsuit, file a new lawsuit, pay for the costs associated with filing a new lawsuit, and prove your own claims. The Board has significant defenses, including but not limited to statute of limitations defenses, failure to exhaust administrative remedies defenses, and that it had a legitimate business reason for the turnarounds to any newly filed claims relating to the 2013 or 2014 turnarounds and had no equally effective, less discriminatory alternatives to turnarounds.

**12. Why Would I Ask To Be Excluded?**

If you already have your own race discrimination lawsuit against the Board and want to continue with it, or if you want to do not want to participate in the settlement for any other reason, you need to ask to be excluded from the Settlement Class.

**13 How Do I Ask The Court To Exclude Me From This Class Action?**

To ask to be excluded, you must send the OPT-OUT FORM that is included in this mailing to the [SETTLEMENT ADMINISTRATOR]. Be sure to include your full name and address, and be sure to sign the OPT-OUT FORM. Your OPT-OUT FORM must be received by the [SETTLEMENT ADMINISTRATOR] on or before _____, 2022. It is your responsibility to make sure that your letter is received by the [SETTLEMENT ADMINISTRATOR] by the deadline.

## B. HOW YOU GET A PAYMENT - STAY IN THE CASE AND SUBMIT A CLAIM FORM

**14. How Can I Get A Payment?**

**This will be your only notice for purposes of the proposed settlement and you WILL NOT receive another notice.**

**If you want to participate in the settlement and not object, you must submit your completed Claim Form and the signed Release by _____, 2022. If you do not do so, your claim will not be timely and will not be accepted.**

**If you choose to object, you must do so by _____, 2022 for your objection to be considered at the Fairness Hearing.**

**To receive a payment from the settlement fund the enclosed Claim Form and an executed release (also enclosed) <u>must be completed and received</u> by the Settlement Administrator Analytics Consulting LLC on or before _____, 2022, to be considered timely. You should mail the form to the Settlement Administrator at the following addresss:**

Chicago Teachers Union v. Chicago Board of Education
P.O. Box 2006
Chanhassen, MN 55317-9800

**It is your obligation to make sure Analytics Consulting LLC receives your completed Claim Form and the release before the due date.** All Claim Forms must be signed under penalty of perjury to be considered.

**15.      When Would I Get My Payment?**

If you are determined to be eligible to receive an Individual Monetary Award, you will receive a check after the Court reviews all of the proposed payments to Class Members. This process may take some time. The parties expect that payments will occur sometime during late-2022.

## C. OBJECT TO THE SETTLEMENT

**16.      How Do I Tell The Court That I Do Not Like The Settlement?**

You can tell the Court that you do not agree with the settlement or some part of it by "objecting" to the settlement. You or your attorney must give reasons in writing why you think the Court should not approve the settlement or why you do not like the settlement or some part of it. You must state whether your objection applies only to you, to a specific subset of the class, or to the entire settlement.  The Court will consider your views. To object, you must send a letter stating that you object to the settlement in *CTU v. Chicago Board of Education,* Case Nos. 12-cv-10311 and 15-cv-8149. The letter must include your name, address, telephone number, signature, and the reasons you object to the settlement. Mail identical copies of the objection to all three of the following addresses:

**CLERK OF THE COURT:**
United States District Court
for the Northern District of Illinois
219 S. Dearborn Street
20th Floor
Chicago, IL 60604

**CLASS COUNSEL:**
Patrick Cowlin
Fish Potter Bolaños, P.C.
111 East Wacker Drive, Suite 2300
Chicago, IL 60601
(312) 205-1702

**DEFENDANT'S COUNSEL:**
John F. Kennedy
Taft Stettinius & Hollister
111 E. Wacker Dr. Suite 2800
Chicago, IL 60601

Your objection <u>must be received</u> at the three addresses above on or before _____, 2022 or it will not be considered.  **This will be your only notice for purposes of the proposed settlement and you WILL NOT receive another notice.   If you choose to object, you must do so by _____, 2022 for your objection to be considered at the Fairness Hearing.  You may not assert an objection if you ask to be excluded from the Settlement Class.**

## D. DO NOTHING

**17.      What Happens If I Do Nothing At All?**

If you do not opt-out or submit a Claim Form and Release, you will not receive an Individual Monetary Award, but you will still be bound by the terms of this settlement, including the release of claims set forth in the Settlement Agreement. As a result, you will not be able to start a new lawsuit, continue with this lawsuit, or be part of any other lawsuit against the Board about the legal issues in these cases at any time in the future.

**Please be advised that this will be your only notice for purposes of the proposed settlement and you WILL NOT receive another notice.**

## RESOLUTION OF CLAIMS

**18.      What Claims Have Been Resolved?**

This settlement represents the resolution of your claims including all causes of action that you asserted or could have asserted based upon the race discrimination claims in the Litigation. Specifically resolved by this settlement are any and all race discrimination claims under Title VII, Section 1981 and Section 1983, arising from the turnarounds in calendar years 2012, 2013, and 2014. Because these claims have been resolved, you may not seek any further resolution or remedy related to these claims, whether you seek monetary damages, injunctive, declaratory or equitable relief, or costs and attorneys' fees, whether arising under Title VII, Section 1981, Section 1983, or under any other federal, state, local or common laws, or regulations relating to the same facts that form the basis of the claims of intentional and unintentional discrimination in these cases.

## THE COURT'S FAIRNESS HEARING

**19.      When And Where Will The Court Decide Whether To Approve The Settlement?**

The Court will hold a hearing at which it will consider the fairness, adequacy, and reasonableness of the proposed settlement (the "Fairness Hearing"). The Court will consider whether:

(A) the Named Plaintiffs and Class Counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the amount and terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The Fairness Hearing will be held on _____, 2022, at ____ .m. in Room _____, 219 S. Dearborn Street, Chicago, Illinois 60604. If there are objections, the Court will consider them. The Court will listen to Class Members who have asked to speak at the hearing (see question 21 below). After the hearing, the Court will decide whether to approve the settlement. The Court will also rule upon the Class Counsel's request for attorneys' fees and costs. We do not know how long after the Fairness Hearing the Court will issue its decision.

## 20.      Do I Have To Come To The Hearing?

You are welcome to attend the Fairness Hearing, but you are not required to attend. If you send a written objection, you are not required to raise your objection in person. As long as your written objection was received on time, the Court will consider it. You may also obtain an attorney at your own expense to represent you personally at the Fairness Hearing, but it is not necessary. Class Counsel will answer any questions that the Court may have.

## 21.      May I Speak At The Hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter of "Notice of Intention to Appear in *CTU v. Chicago Board of Education*" stating that you will attend the Fairness Hearing and requesting the Court to allow you to speak. You must include your name, address, telephone number, and signature in the letter. Your Notice of Intention to Appear must be received no later than _____, 2022 at all three of the following addresses:

**CLERK OF THE COURT:**
United States District Court
for the Northern District of Illinois
219 S. Dearborn Street
20th Floor
Chicago, IL 60604

**CLASS COUNSEL:**
Patrick Cowlin
Fish Potter Bolaños, P.C.
111 East Wacker Drive, Suite 2300
Chicago, IL 60601
(312) 205-1702

**DEFENDANT'S COUNSEL:**
John F. Kennedy
Taft Stettinius & Hollister
111 E. Wacker Dr. Suite 2800
Chicago, IL 60601

**You may not speak at the Fairness Hearing if you ask to be excluded from the Settlement Class.**

## GETTING MORE INFORMATION

**22.     How Do I Get More Information?**

This Notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Class Counsel at either of the following addresses:

<table>
<tr><td>Patrick Cowlin</td><td>Randall D. Schmidt</td></tr>
<tr><td>Fish Potter Bolaños, P.C.</td><td>Edwin F. Mandel Legal Aid Clinic</td></tr>
<tr><td>111 East Wacker Drive, Suite 2300</td><td>6020 S. University Ave.</td></tr>
<tr><td>Chicago, IL 60601</td><td>Chicago, IL 60637</td></tr>
<tr><td>(312) 205-1702</td><td>(773) 702-9611</td></tr>
<tr><td>www.fishlawfirm.com</td><td></td></tr>
</table>

For more information, you may also visit _____, where you will find the Settlement Agreement, the Court's Order certifying the Certified Class, the Preliminary Approval Order, the Court's Order certifying the Settlement Class, and the Notices to Class Members. You may also call or write to Class Counsel with any questions regarding this class action.

**PLEASE DO NOT TELEPHONE THE CLERK OF THE COURT,**
**THE JUDGE IN THIS CASE, OR THE JUDGE'S CHAMBERS OR STAFF!**

Dated: _____, 2022

CLERK, U.S. District Court
Northern District of Illinois