IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO TEACHERS UNION, LOCAL 1, et al., ) ) ) Plaintiffs, ) ) v. ) ) ) BOARD OF EDUCATION OF THE CITY ) OF CHICAGO, a body politic and corporate, ) ) Defendant. ) | Case Nos. 12-cv-10311, 15-cv-8149<br><br>Judge Sara L. Ellis<br>Magistrate Judge Young Kim |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF A CLASS ACTION SETTLEMENT**

Plaintiffs, the Chicago Teachers Union, Local 1, American Federation of Teachers, AFL-CIO ("CTU"); Donald L. Garrett Jr., Robert Green, and Vivonell Brown, Jr. (the "Named Plaintiffs"); and the classes they represent (collectively "Plaintiffs"), through their respective counsel, move this Honorable Court for a final order approving the proposed Settlement Agreement in the above captioned action. In support of this Motion, the Plaintiffs state as follows:

1. On December 26, 2012, the CTU and the Named Plaintiffs filed a Class Action Complaint (Case No. 12-cv-10311, herein, the "2012 Case") in the United States District Court for the Northern District of Illinois asserting individual and class claims of race discrimination. This case was then combined with another case on September 16, 2015 when the CTU filed a Class Action Complaint (Case No. 15-cv-8149, the "2015 Case," collectively with the 2012 Case, the "Litigation") in the United States District Court for

the Northern District of Illinois asserting individual and class claims of race discrimination. Both of the cases under Title VII, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, against the Board on behalf of African American persons employed by the Board as teachers and paraprofessionals in any school or attendance center subject to turnaround on or after the 2011 calendar year, including during the 2013 and 2014 calendar years.

2. On December 9, 2015, this Court certified a class of African-American teachers and PSRPs in the 2012 Case, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure (the "Certified Class"). The Certified Class was defined as follows:

> All African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," in the 2012 calendar year.

Case No. 12-cv-10311, Dkt. 173.

3. On May 23, 2016, a Class Notice was issued by mail to all individuals identified as potential class members. One individual opted out of the Certified Class at that time.

4. On March 17, 2021, the Court denied the Parties' cross motions for summary judgment. Dkt. 314.

5. The Parties participated in settlement negotiations mediated by Magistrate Judge Kim starting in April 2021. Those negotiations were lengthy and

2

were conducted in good faith and at arm's-length. The negotiations resulted in a Settlement Agreement to settle this action for a total of $9.25 million plus costs of administration in lieu of a trial on the merits. *See* Ex. 1 (settlement agreement).

6. This Court granted Preliminary Approval of the Settlement on April 14, 2022. Dkt. 358. The Preliminary Approval order certified the following class covering the "2015 case" for settlement purposes, in addition to the Certified Class described above:

> All African American persons employed by the Board of Education of the City of Chicago as a teacher or para-professional staff, as defined in the labor agreement between the Chicago Teachers Union and the Board of Education, in any school or attendance center subjected to reconstitution, or "turnaround," in the 2013 and/or 2014 calendar years.

## The Notice Requirements of Rule 23 Have Been Met

7. Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. In the Preliminary Approval Order, the Court determined that the form, content, and proposed distribution of the Class Notice met the requirements of Rule 23. *See* Dkt. 358. Class Counsel and the Claims Administrator have fulfilled their obligations under this Order and thus satisfied Rule 23's notice requirements.

8. Analytics Consulting LLC ("Analytics") is the company engaged by Class Counsel to provide settlement administration services in these cases. In this capacity, Analytics was charged with (a) establishing and maintaining a related settlement fund account; (b) establishing and maintaining a calendar of administrative deadlines and responsibilities; (c) printing and mailing the Notices of Class Action Settlement; (d) receiving and validating Requests for Exclusion, Objections and Claims submitted by Class Members; (e) processing and mailing payments to Class Members and Class Counsel; and (f) other tasks as the Parties mutually agree or the Court orders Analytics to perform. Ex. 2 at ¶ 3.

9. On May 6, 2022, Analytics mailed the court-approved Certified or Settlement Class Notice, Claim Form, Release, IRS Form W9, and Opt Out Form (for Settlement Class Members only) to the most current mailing address of 414 Certified and Settlement Class Members. Ex. 2 at ¶ 7. Each Notice Packet included a postage pre-paid return envelope. *Id.* Prior to the above mailing, Analytics used the National Change of Address Database and information provided by Class Counsel to obtain the most current mailing addresses of the class members. *Id.* at ¶ 6.

10. Analytics established a dedicated website and email inbox for this case to provide assistance and information to the class members. *Id.* at ¶ 8.

11. If a Notice Packet was returned by the USPS as undeliverable and without a forwarding address, Analytics performed an advanced address using Experian, a reputable research tool, and obtained updated addresses Class Counsel

4

received from class members. *Id.* at ¶ 9. Of the 414 class members, only eleven (11) Notice Packets were returned as undeliverable after subsequent mailings, meaning 97.3% of the class members received notice at the most current address Analytics had for each member. *Id.* The CTU included a reminder to submit Claim Forms in its July 22, 2022 digital newsletter emailed to CTU members. On or about July 27, 2022, the CTU sent text messages to class members who had not submitted claim forms, and provided Class Counsel's contact information so that members could obtain more information and another copy of the Notice Packet if needed.

12. The Notices explained that class members could object to the Settlement by June 24, 2022 and that Settlement Class members could opt-out of the Settlement by June 16, 2022. *Id.* No members of the Settlement Class opted-out of the Settlement and no class members objected to the Settlement. *Id.* at ¶¶10-11.

13. The original deadline to return Claim Forms, Releases, and IRS Form W-9s was August 10, 2022. However, the deadline to submit a claim forms was extended to September 9, 2022. Dkt. 361. As of August 19, 2022, a total of 232 Claim Forms have been received, 119 from Settlement Class Members and 113 from Certified Class Members. Ex. 2 at ¶ 12. Analytics received 214 Claim Forms by August 10, 2022. *Id.* Of the 18 Claim Forms received after August 10, 2022, 15 were postmarked on or before August 10, 2022, one was postmarked August 13, 2022 and two had no legible postmark but were received on August 15, 2022. *Id.* If a Claim Form was deficient, Analytics promptly contacted the Class Member to allow

them to cure their Claim Form. *Id.* As of August 19, 2022, four (4) Claim Forms remain deficient. *Id.*

## Final Approval Should be Granted Because the Settlement is Fair, Reasonable, and Adequate

14. Class settlements must be approved by the court and the court's inquiry is limited to whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(3); *Isby v. Bayh*, 75 F.3d 1191, 1196( 7th Cir. 1996) (settlements of class action litigation is favored by federal courts). To evaluate fairness of a settlement, courts consider: (1) the strength of the plaintiffs' case compared to the amount of the settlement offer; (2) the complexity, length, and expense of the litigation; (3) the amount of opposition to settlement among the affected parties; (4) the opinion of competent counsel; and (5) the state of the proceedings the discovery completed at the time of the settlement. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958-59 (N.D. Ill. 2011) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F. 3d 646, 653 (7th Cir. 2006)).

15. As set forth in Plaintiffs' preliminary approval motion, the terms of the Settlement Agreement satisfy each of these criteria. Dkt. 355. No class members have objected to the terms of the settlement and no class members have opted out of the settlement. As such, the settlement continues to meet these requirements for the reasons set forth in the Court's Preliminary Approval Order. Dkt. 358. This Settlement provides substantial compensation to the class, many of whom were re-

hired at CPS after the Turnarounds, in the face of substantial risk of receiving nothing after a trial. The Settlement should be granted Final Approval.

16. The total amount of the Settlement is $9,250,000.00 plus the costs of settlement administration to settle the claims brought in this litigation. Ex. 1 ¶ 4.1(a). From this amount, $75,000.00 will be allocated equally to the three Named Plaintiffs as Named Plaintiff Enhancement Payments for their service as Class Representatives and for their participation in this litigation. Ex. 1, ¶ 4.1(b)(ii). Each Named Plaintiff expended a great deal of time and effort on this case over a period of many years, including filing EEOC charges, filing this lawsuit, appearing for depositions, and responding to the Board's written discovery requests. The Named Plaintiffs' efforts and perseverance over a decade of litigation were indispensable to the excellent result achieved by this settlement. In addition, they incurred substantial risk to their professional reputations, careers, and livelihoods, on top of other risks of litigation. *See Briggs v. PNC Fin. Servs. Grp.* 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *8-9 (N.D. Ill. Nov. 29, 2016); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRHCJP, 2014 U.S. Dist. LEXIS 12037, at *13-14 (S.D. Ill. Jan. 31, 2014) (litigation against employee's current or former employer carries unique risks and fortitude). Finally, the $25,000 service awards well within the range courts in this circuit approve, especially for matters this complex and long lasting. *See, e.g., Siemer v. Quizno's Franchise Co. LLC*, No. 07 C 2170, 2010 WL 3238840, at *3 (N.D. Ill. Aug. 13, 2010) (approving $50,000 incentive award); *Porter v. Pipefitters Ass'n Loc. Union 597*, No. 12-cv-9844, Dkt. 254 at 11 (N.D. Ill. Nov. 24, 2020) (approving

7

$35,000 incentive award); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving $25,000 incentive award); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (same); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *17 (N.D. Ill. Feb. 28, 2012) (same). Class members were informed of the proposed service awards in their settlement notices and none objected. The service awards are therefore fair and reasonable and should be granted final approval.

17. Concurrent with this Motion, Class Counsel filed a Motion for Attorneys' Fees and Costs, which seeks $4,000,000.00 to pay Class Counsel's and Counsel for the CTU's reasonable attorneys' fees and costs. Ex. 1, ¶ 4.1(b)(iii). For all the reasons set forth in that motion, the requested amount of fees and costs is fair and reasonable. Class Counsel and Counsel for the CTU have incurred more than $408,000 in out-of-pocket costs and expenses to date. In addition, Class Counsel and Counsel for the CTU have incurred more than $4,300,000 in attorneys' fees to date and expect to incur significant additional fees as they complete the claims process and monitor distribution of the Individual Settlement Payments once Final Approval is granted. The attorneys' fees requested are within the range of class action contingency fee agreements in this market and are a substantial reduction of the actual attorneys' fees and costs incurred by Class Counsel and Counsel for the CTU in this matter. The Board does not contest the CTU's request for attorneys' fees and costs. Class members were informed of the amount of attorneys' fees and costs being sought and none objected to the requested fee.

18. The remaining $5,175,000.00 will be allocated to the Eligible Class Members, those who submit valid Claim Forms and Releases. Ex. 1, ¶ 4.1(b)(i). This sum will provide substantial compensation to each Eligible Class Member pursuant to a Distribution Formula.

19. Class Counsel have preliminarily evaluated the Claim Forms received to date and have created a preliminary Distribution Formula. The preliminary Distribution Formula is filed under seal concurrent with this Motion with a copy provided to Defendant's counsel. The Distribution Formula provides for a fair and reasonable way to allocate funds pursuant to the Settlement Agreement and the Preliminary Approval order, based on the following factors: (a) whether the Eligible Class Member was a paraprofessional, probationary appointed teacher, tenured teacher, or teacher with no tenure status; (b) whether the Eligible Class Member was reemployed by the Board, able to find work at another school, unable to find work, or retired; (c) whether the Eligible Class Member was subject to a Turnaround in 2012, 2013, and/or 2014; and (d) the non-monetary impact the turnaround had on the Class Member. Ex. 1, ¶ 5.2(e); Dkt. 358. The Distribution Formula awards points based on the above factors. Each claimant will receive a base payment plus their pro rata share of the available settlement funds based on their individual number of points divided by the total number of points awarded to all the claimants. The final Distribution Formula will be approved by the Court after receipt of all of the claim forms. Ex. 1, ¶ 5.2(d).; See Dkt. # 359 (motion to

extend claim-in deadline to September 9, 2022). Class Counsel will finalize the Distribution Formula and each claimant's award by October 11, 2022. *Id.*

20. Once paid, no portion of the settlement funds will be returned to the Board except provided in Section 18.2(d) of the Settlement Agreement (if Agreement becomes null and void because, e.g., it is not approved). If any portion of the Net Settlement Fund has not been distributed after 120 days from the date on which the settlement checks are mailed by the Settlement Administrator, then such remaining amounts shall be provided as a *cy pres* designation to Grown Your Own Teachers. Exh. 1, ¶ 5.2(h). Grow Your Own Teachers is a non-profit organization that serves the Chicago area to further the education of minorities enrolled in a program that can lead to a teaching certificate or employment at Chicago Public Schools. *See* https://growyourownteachers.org/. The work of the *cy pres* designee is directly aligned with the goals of this litigation and should be approved.

21. Pursuant to the Preliminary Approval Order, Class Counsel, as trustees of the Class Settlement Trust Fund, have obtained an EIN and opened a bank account in the name of the trust at Wintrust Bank. Within twenty-one (21) days of the Effective Date, the Board will pay or cause to be paid by wire transfer and/or check the entire Settlement Payment into the account. Exh. 1, ¶ 4.2(c).

22. Upon entry of Final Approval, this Settlement Agreement shall be final and binding upon the Class, the Parties, their successors, and assignees and shall release all claims as set forth in the Settlement Agreement.

WHEREFORE, for the reasons set forth above and in the Motion for Preliminary Approval, the Court should grant Final Approval of the Parties' Class Action Settlement. Class Counsel will submit a Proposed Order detailing Final Approval and the Parties' obligations to the Court's proposed order inbox.

Respectfully submitted,

For PLAINTIFFS and the CLASSES

/s/ Robin Potter & Patrick Cowlin
Robin Potter
Patrick Cowlin
Fish Potter Bolaños, P.C.
111 East Wacker Drive, Suite 2300
Chicago, IL 60601
(312) 861-1800
rpotter@fishlawfirm.com
pcowlin@fishlawfirm.com


/s/Randall D. Schmidt
EDWIN F. MANDEL LEGAL AID CLINIC
  OF THE UNIVERSITY OF CHICAGO
  LAW SCHOOL
6020 South University Avenue
Chicago IL 60637
(773) 702-9611
r-schmidt@chicago.edu


Dated: August 22, 2022

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 22, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. All counsel of record for Defendants are registered CM/ECF users and service will be accomplished by the CM/ECF system.

                                          /s/ Patrick Cowlin
                                          Patrick Cowlin